# United States Court of Appeals
## For the First Circuit

---

No. 00-1541
No. 00-1578

NANCY CLOCKEDILE,

Plaintiff, Appellant/Cross-Appellee,

v.

NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS,

Defendant, Appellee/Cross-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

---

Before

Selya, Boudin and Stahl,

Circuit Judges

---

Michael J. Sheehan for plaintiff.
John F. Suhre with whom C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, and Vincent J. Blackwood, Assistant General Counsel, were on brief for the Equal Employment Opportunity Commission, Amicus Curiae.
Nancy J. Smith, Senior Assistant Attorney General, Civil Bureau, with whom Philip T. McLaughlin, Attorney General, was on brief for defendant.

March 30, 2001

BOUDIN, Circuit Judge. In this case, Nancy Clockedile won a jury verdict against the New Hampshire Department of Corrections ("the Department") for retaliating against her after she filed a sexual harassment charge. The trial court, constrained by our holding in Johnson v. General Electric, 840 F.2d 132, 139 (1st Cir. 1988), set aside the award because Clockedile had not alleged the pertinent retaliation in her administrative complaint. On this appeal, the main issue is whether Johnson should be reconsidered.

The Department hired Clockedile as a counselor in March 1995 and assigned her to co-teach a course at the state prison's minimum security unit. Clockedile met often during May and June with the unit manager, John Martin, who, she later averred, made offensive remarks to her of a sexual nature. Clockedile said that when she objected, Martin laughed at her and began a campaign of derision, joined by his officers, which ended with the cancellation of one of her class meetings in November 1995. She then filed a complaint against Martin with the Department's sexual harassment committee.

After this internal complaint, the Department promptly discontinued Clockedile's teaching in Martin's unit and she thereafter had nothing to do with him. However, Clockedile had already hired a lawyer, and on December 8, 1995, she had filed a sexual harassment charge with the New Hampshire Human Rights Commission, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). The administrative charge was an abbreviated version of the internal complaint, charging Martin with sexual harassment and describing his behavior as including retaliation by Martin for Clockedile having confronted him. In January 1996, the Department found insufficient evidence to determine that the claims alleged in Clockedile's internal complaint were true.

Clockedile later said that between January 1996 and February 1997, the Department retaliated against her, first by relocating her on January 15, 1996, to a hallway desk in another building; the Department has asserted that the relocation was due to the conversion of her old building into a halfway house. Clockedile also described as retaliation her transfer out of the community corrections unit, another relocation in the spring of 1996, and a reassignment to teach a different class; the Department said that these actions were required by restrictions on use of the funds that paid for Clockedile's job.

In August 1996, Clockedile complained to the warden about an officer, claiming that the officer was "inciting male officers against the female officers" and had said that Clockedile was encouraging a female officer to sue the Department for sexual harassment. In October and November 1996, Clockedile made two more internal complaints about guards and other staff members who were allegedly shunning or disparaging her--or attempting to prevent her from chatting with a then boyfriend (a guard) during breaks--all allegedly because she filed the EEOC charge against Martin. On October 28, 1996, between these complaints, Clockedile received a right-to-sue letter from the EEOC.

At the start of January 1997, Clockedile received an official letter of warning from her unit head for "exhibiting uncooperative or disruptive behavior" on a "variety of issues" over the last several months.[1] This letter followed a "privileged and confidential" memorandum from the Department's legal counsel who had written to the unit head on November 7, 1996, as follows:

---

[1]Mentioned specifically were her failure to produce physicians' certificates for medical leave that she took on several occasions in 1996, her failure to cooperate with respect to the investigation resulting from her August 1996 oral complaint to the warden, and her "meddling" in third-party complaints of sexual harassment in contravention of orders to stop.

> Recently, the Human Rights Commission gave Nancy a 'right to sue' letter. She has 180 days [sic] to file a complaint. She is still a problem employee. She has much too much time on her hands.
>
> I request that you come up with a plan by next Wednesday to better utilize her talents to keep her fully employed. This will hopefully not give her time to gossip.

Needless to say, Clockedile now cites the subsequent letter of warning as retaliation, adding that, on at least one occasion, the Department later canceled a meeting of one of her classes, claiming that she was late; Clockedile says she was on time and calls this a further instance of retaliation.

On January 24, 1997, Clockedile brought suit in federal district court charging sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) & 2000e-3(a) (1994). In mid-February 1997, Clockedile took medical leave and did not return to work, claiming constructive discharge because of the succession of events already described. In her federal suit, Clockedile sought back pay, front (i.e., future) pay, and compensation for emotional harm.

After a trial in October 1999, a jury awarded her $129,111 on the retaliation claim, partly for back pay ($67,861) and partly for compensatory damages ($61,250), but awarded no front pay and found against her on the sexual harassment claim. The district court then granted the Department's post-trial

motion for judgment as a matter of law because Clockedile's filing with the agencies had not alleged retaliation by the Department. Clockedile now appeals, asking, inter alia, that Johnson be reconsidered; and the Department protectively cross-appeals, arguing that the evidence did not justify the jury's finding of retaliation.[2]

Title VII requires, as a predicate to a civil action, that the complainant first file an administrative charge with the EEOC within a specified and relatively short time period (usually 180 or 300 days) after the discrimination complained of, 42 U.S.C. § 2000e-5(e)(1), and that the lawsuit be brought within an even shorter period (90 days) after notice that the administrative charge is dismissed or after the agency instead issues a right-to-sue letter, id. § 2000e-5(f)(1). Despite occasional references to "jurisdiction," this is basically an exhaustion requirement coupled with a short statute of limitations both on complaining to the agency and on filing the

_____

[2]Clockedile also says that she did complain of retaliation in her agency complaint and that in any event the Department has waived the Johnson objection. However, Martin's alleged initial retaliation, mentioned in the agency complaint, was wholly different from the acts of retaliation on which the court suit centered; and the failure to assert the latter in an agency complaint was effectively raised as an objection by the Department and pressed before the case went to the jury. The district court's post-trial decision addressed both points in full, and we adopt its explanation.

subsequent court case.  <u>Zipes</u> v. <u>Trans World Airlines, Inc.</u>, 455 U.S. 385, 393-95 & n.12 (1982).

However, Title VII does not say explicitly that the court suit must be limited to just what was alleged in the agency complaint.  And the courts, while assuming that some kind of a relationship must exist, have  sometimes allowed court claims that go beyond the claim or claims made to the agency, and sometimes not.  The outcomes and rationales vary markedly where the claimant offers new incidents of discrimination or an entirely new theory.  <u>Compare</u>, <u>e.g.</u>, <u>Taylor</u> v. <u>Western & Southern Life Ins. Co.</u>, 966 F.2d 1188, 1195-96 (7th Cir. 1992), <u>with</u> <u>Antol</u> v. <u>Perry</u>, 82 F.3d 1291, 1295-96 (3d Cir. 1996).  <u>See generally</u> 4 Larson, <u>Employment Discrimination</u> § 76.06 (2d ed. 2000) (collecting dozens of cases).

We are concerned here with one recurrent problem, namely, whether (or to what extent) a lawsuit following a discrimination complaint can include a claim of retaliation not made to the agency.  In <u>Johnson</u>, this court concluded in a terse but straightforward discussion that such a lawsuit is limited to claims that "must reasonably be expected to . . . have been within the scope of the EEOC's investigation," 840 F.2d at 139, an approach adopted by this and a number of other circuits, <u>e.g.</u>, <u>Ang</u> v. <u>Procter & Gamble Co.</u>, 932 F.2d 540, 545 (6th Cir.

-7-

1991).  The <u>Johnson</u> court said that this did not include retaliation for filing a charge where the complainant had not "even informed the EEOC of the alleged retaliation."  840 F.2d at 139.

In setting aside the verdict in this case, the district court invited us to reexamine <u>Johnson</u>, noting that since <u>Johnson</u>, most circuits have permitted retaliation claims to be made in court even though only the discrimination charge was made to the agency.[3]  The district court also pointed to the danger of mouse-trapping complainants, who often file their agency complaints without counsel.  <u>See, e.g.</u>, <u>Taylor</u>, 966 F.2d at 1195.  Further, the EEOC has appeared as amicus curiae, advising us that (contrary to <u>Johnson</u>'s implicit assumption), it is "likely" that the alleged retaliation against Clockedile for

---

[3]<u>Kirkland</u> v. <u>Buffalo Bd. of Educ.</u>, 622 F.2d 1066, 1068 (2d Cir. 1980) (per curiam); <u>Howze</u> v. <u>Jones & Laughlin Steel Corp.</u>, 750 F.2d 1208, 1212 (3d Cir. 1984); <u>Nealon</u> v. <u>Stone</u>, 958 F.2d 584, 590 (4th Cir. 1992); <u>Gottlieb</u> v. <u>Tulane Univ.</u>, 809 F.2d 278, 284 (5th Cir. 1987); <u>Malhotra</u> v. <u>Cotter & Co.</u>, 885 F.2d 1305, 1312 (7th Cir. 1989); <u>Wentz</u> v. <u>Maryland Cas. Co.</u>, 869 F.2d 1153, 1154 (8th Cir. 1989);  <u>Anderson</u> v. <u>Reno</u>, 190 F.3d 930, 938 (9th Cir. 1999); <u>Brown</u> v. <u>Hartshorne Pub. Sch. Dist. No. 1</u>, 864 F.2d 680, 682 (10th Cir. 1988); <u>Baker</u> v. <u>Buckeye Cellulose Corp.</u>, 856 F.2d 167, 168-69 (11th Cir. 1988).  The Sixth Circuit position is unclear, <u>compare</u> <u>Ang</u> v. <u>Procter & Gamble Co.</u>, 932 F.2d 540, 546-47 (6th Cir. 1991), <u>with</u> <u>Duggins</u> v. <u>Steak 'N Shake, Inc.</u>, 195 F.3d 828, 831-33 (6th Cir. 1999), and the D.C. Circuit is silent.

filing her charge would "have been uncovered in a reasonable EEOC investigation" of the charge.

Having weighed these arguments, to which the Department has replied, we think that Johnson's rule regarding retaliation claims should be abandoned simply because its premise as to what the EEOC investigates turns out to be incorrect. Here, little threat exists of upsetting reasonable reliance on Johnson because Clockedile did complain to the Department itself that it was retaliating against her even though not in a formal EEOC charge. While a panel in this circuit usually follows prior circuit precedent, the EEOC's position is a new development; and the panel has consulted with all active judges before issuing this decision, although this does not rule out reconsideration en banc. Trailer Marine Transp. Corp. v. Rivera Vazquez, 977 F.2d 1, 9 n.5 (1st Cir. 1992).

Nevertheless, there remain questions about whether and how we should apply in this case Johnson's more general "scope of the investigation" test, which this court has previously reaffirmed, Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996); Powers v. Grinnell Corp., 915 F.2d 34, 38-39 (1st Cir. 1990). In its favor, the test, where it refers to an actual investigation by the agency, correlates fairly well with

the dual aims of the statutory scheme: to give the agency a chance to conciliate (the exhaustion goal), 41 U.S.C. § 2000e-5(b), and to provide quick notice to the employer (the statute of limitations goal), Taylor, 966 F.2d at 1195.

The test, however, becomes disconnected from these justifications where--as often seems to be the case, see Park v. Howard Univ., 71 F.3d 904, 907 n.1 (D.C. Cir. 1995), cert. denied, 519 U.S. 811 (1996)--the agency does not investigate. Such appears to be the situation here. In this case, Clockedile obtained a lawyer by the end of 1995, filed her agency complaint early in December before the first act of alleged departmental retaliation, and soon thereafter sought a right-to-sue letter.[4] The record does not show that the EEOC or the state agency ever conducted an investigation, and the "scope of the investigation" rationale for allowing Clockedile's retaliation claims is correspondingly weakened.

There is a further problem for Clockedile under the "scope of the investigation" test. Key acts of retaliation that she relied on at trial (alleged attempts to enforce separation

---

[4]Indeed, in a January letter, Clockedile's lawyer told the New Hampshire Commission for Human Rights that she believed that she would be requesting a right-to-sue letter and, therefore, the state commission would "not be involved in investigating this matter." In a letter the next day to the EEOC, Clockedile's attorney requested "a Notice of Right to Sue."

-10-

from her boyfriend, the letter of reprimand) occurred <u>after</u> she received her right-to-sue letter in October 1996, and the alleged constructive discharge seemingly occurred even later (<u>after</u> her lawsuit had been filed in January 1997). It is a stretch to describe acts that occurred after agency proceedings have ended, <u>see</u> 29 C.F.R. § 1601.28(a)(3) & (b)(1) (2000), as "within" the scope of the agency investigation.

Clockedile's retaliation claims might fare better under an alternative rubric. Not all circuits have relied on the "scope of the investigation" test. A plurality of circuits--including the Second, Fourth, Seventh, Eighth, Ninth, and Tenth--have said that the complainant may assert other claims "reasonably related" to those alleged in the agency charge, <u>e.g.</u>, <u>Kirkland</u>, 622 F.2d at 1068, and the Fifth Circuit has an "ancillary jurisdiction" rule for retaliation claims that provides similar flexibility, <u>e.g.</u>, <u>Gottlieb</u>, 809 F.2d at 284 (5th Cir. 1987). Such flexibility is purchased by using fairly vague terms ("related," "ancillary"), but under these terms, claims of retaliation growing out of a discrimination filing are regularly included.

The result, at least as to retaliation, can be justified in policy terms. Retaliation uniquely chills remedies; and by retaliating against an initial administrative

charge, the employer discourages the employee from adding a new claim of retaliation.  <u>See</u> <u>Malhotra</u>, 885 F.2d at 1312.  If the retaliation is official, there is no need to worry about notice: the employer should already know.[5]  And, as between the employer and the employee, the former is in a better position to appreciate the rules about what legitimate legal claims may exist and be preserved.

On balance, we think the cleanest rule is this: retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency--<u>e.g.</u>, the retaliation is for filing the agency complaint itself.  Someday the Supreme Court will bring order to this subject; until then, this is a practical resolution of a narrow but recurring problem.  And, while the circuits' broader theories may diverge, this retaliation rule is a result on which the decisions generally converge, whatever the explanation given (see note 3, above).

---

[5]It is only adverse action that is covered; and while an employer could be liable for failing to take action against unauthorized retaliation, this would normally be true only after the employee complained--which itself provides notice of a sort. <u>See</u> <u>Conetta</u> v. <u>National Hair Care Ctrs., Inc.</u>, 236 F.3d 67, 76 (1st Cir. 2001).  <u>See generally</u> EEOC Compliance Manual § 8-II (May 20, 1998) (discussing the "essential elements of a retaliation claim").  More broadly, a claim of retaliation by low-level employees could easily be compromised, at least in the eyes of a jury, by the failure to raise the matter with management unless there were good grounds for failing to do so.

In adopting this rule, we take no position on the proper rule for non-retaliation claims. As already noted, the courts are far more divided, and the law more confused, on how to handle situations in which a plaintiff advances in court claims based on additional acts of discrimination or alternative theories that were never presented to the agency. The circumstances vary widely; and perhaps no simply stated rule neatly resolves all problems. In all events, we are satisfied that claims of retaliation are homogeneous enough and sufficiently distinct from other problems to justify a general rule.

This brings us to the Department's alternative argument (its formal cross-appeal was unnecessary, see Plymouth Sav. Bank v. I.R.S., 187 F.3d 203, 209 (1st Cir. 1999)), that the district court's judgment for the Department should stand because the evidence did not support the jury verdict. The Department says that Clockedile did not make out a prima facie case for retaliation or provide sufficient evidence to show that the Department's motives were pretextual. At worst, the Department argued, it had mixed motives and would in any event have taken the same actions on permissible grounds, Tanca v. Nordberg, 98 F.3d 680, 684-85 (1st Cir. 1996), cert. denied, 520 U.S. 1119 (1997).

-13-

The history of interactions between Clockedile and various individuals within the Department is remarkably complicated, given her short tenure (less than two years before her final medical leave). What the evidence shows is that from the time of her internal complaint against Martin, she and the Department were constantly at odds on a succession of seemingly small matters, such as who was to blame for cancelled classes and problems with her paperwork for medical leave, as well as alleged acts of individualized disparagement and harassment by guards or other staff.

Given the jury verdict, we must largely accept Clockedile's version of <u>what</u> events occurred. Still, Clockedile's case as to the retaliatory motive for most of these actions is weak. The timing of some events (<u>e.g.</u>, the transfer to the hallway desk) creates an arguable inference of retaliation, <u>see</u> <u>Hodgens</u> v. <u>General Dynamics Corp.</u>, 144 F.3d 151, 168 (1st Cir. 1998), but the Department offered some objective evidence to explain such actions, and Clockedile was or became a troublesome employee whose conduct at work could explain some of the Department's actions. The legal counsel's memorandum aside, little direct evidence links specific actions with an explicit retaliatory motive.

However, the memorandum is direct evidence of an explicit retaliatory reaction to the right-to-sue letter, and it was soon followed by a severe reprimand to Clockedile from the addressee of the memorandum. The Department, in its very able brief, says that the reprimand alone had no concrete consequences, but the Department's brief fails fully to credit the possibility that the jury could have regarded the memorandum as casting a sinister light on the prior actions complained of by Clockedile.

Having read much of the transcript, we doubt that a retaliatory motive figured decisively in most of the Department's conduct. But we are also unwilling to upset a jury's assessment of the <u>pattern</u> of events where there was direct evidence of a wrongful motive and the jury could reasonably have disbelieved some of the Department's explanations. <u>See</u> <u>White</u> v. <u>New Hampshire Dep't of Corrections</u>, 221 F.3d 254, 259 (1st Cir. 2000). The jury showed a sense of proportion limiting claims and damages, and an attentive trial judge declined to find the evidence insufficient.

The judgment of the district court is <u>vacated</u> and the case is <u>remanded</u> for reinstatement of the jury verdict.

<u>It is so ordered</u>.