US v. Gingras                    CR-02-047-M    09/23/02

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


United States of America,
      Plaintiff

      v.                                    Criminal No. 02-47-1-M
                                            Opinion No. 2002 DNH 169
Michael Gingras,
      Defendant


## O R D E R


Michael Gingras has been charged with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and use of a communication facility in the commission of a felony, in violation of 21 U.S.C. § 843(b).  Before the court is the government's motion to disqualify Gingras's co-counsel, Steven Gordon, Esq., because of an alleged conflict of interest. Defendant objects.  For the reasons given below, the government's motion is denied.


## FACTUAL BACKGROUND

The government is concerned because Attorney Gordon previously represented Samuel Bellavance, a potential prosecution witness in this case.  The government subpoenaed Bellavance to

testify before the grand jury about his knowledge of Gingras's alleged criminal activity. Bellavance retained Attorney Gordon to represent him throughout the grand jury proceeding. Attorney Gordon negotiated an order of immunity for Bellavance. See 18 U.S.C. § 6003. Consequently, on April 10, 2002, Bellavance testified before the grand jury and, for all practical purposes, no longer faces criminal liability. Attorney Gordon also represented Bellavance regarding asset forfeiture issues directly related to Gingras's criminal case. That representation was completed on November 8, 2001.

In late spring of 2002, Gingras asked Attorney Gordon to serve as his co-counsel, assisting Attorney Martin Weinberg, Gingras's lead defense counsel. Before agreeing to represent Gingras, Attorney Gordon contacted Bellavance to secure his consent. Gordon obtained Bellavance's oral consent in a telephone conversation, but also sent Bellavance a letter dated June 6, 2002, in which he addressed issues associated with his potential representation of Gingras.

Attorney Gordon's letter, which included a written waiver form for Bellavance to sign if he consented, plainly disclosed that Gordon's representation of Gingras would be substantially related to the matter in which Attorney Gordon had previously represented Bellavance and that a possible conflict of interest existed between Bellavance and Gingras.  It also informed Bellavance that in the event Bellavance was called as a witness, Gordon would neither participate in cross-examination nor disclose any confidential information relating to the prior representation in aid of Gingras's defense.  Gordon stated that lead counsel, Attorney Weinberg, would handle any cross-examination.  Gordon also enclosed a copy of N.H. R. PROF. CONDUCT 1.7 (Conflict of Interest: General Rule), N.H. R. PROF. CONDUCT 1.8 (Conflict of Interest: Prohibited Transactions), and N.H. R. PROF. CONDUCT 1.9 (Conflict of Interest: Former Client) for Bellavance to review.  Finally, Gordon's letter encouraged Bellavance to consult independent counsel before signing the waiver.

On or about June 11, 2002, Bellavance executed the waiver, thereby consenting to Gordon's limited representation of Gingras in this case.  Gordon sent Bellavance another letter, dated June

12, 2002, further explaining the contents of the waiver agreement. In that letter, Attorney Gordon included copies of N.H. R. PROF. CONDUCT 1.6 (Confidentiality of Information) and N.H. R. PROF. CONDUCT 3.3 (Candor Toward the Tribunal).

Upon receipt of Bellavance's written waiver, Gordon informed Gingras, by letter, that if he was retained as co-counsel in the case, he would not disclose to Gingras or to lead counsel Weinberg, any confidential information he acquired during the course of his representation of Bellavance. Attorney Gordon further informed Gingras that if Bellavance was called as a witness, he would not participate in case preparation related to Bellavance or in his cross-examination. Gordon also enclosed copies of Rules 1.7, 1.8, and 1.9 of the New Hampshire Rules of Professional Conduct, and suggested that Gingras consult independent counsel prior to executing a waiver included with the letter. On June 24, 2002, Gingras signed the written consent form, acknowledging the limited role Gordon would play as co-counsel and formally retaining Attorney Gordon to represent him, subject to the limitations Attorney Gordon had outlined.

On June 27, 2002, Gordon sent a letter to the prosecutor, Assistant United States Attorney Mark Irish, informing him that he had been retained to represent Gingras as co-counsel and that he had obtained written consent from both Bellavance and Gingras. On August 2, 2002, the government moved to disqualify Gordon from representing Gingras.

## DISCUSSION

The government asserts that Attorney Gordon has an actual, as well as potential, conflict of interest under Rule 1.9 of the New Hampshire Rules of Professional Conduct. The government also asserts that even absent a violation of Rule 1.9, the court should disqualify Gordon to preserve the integrity of the trial process by precluding even an appearance of conflict, as well as to eliminate any future ineffective assistance of counsel claim based on an asserted conflict.

Defendant objects to the government's motion to disqualify on grounds that: (1) no conflict or potential for conflict arises from Gordon's representation of Gingras; (2) in the event that Bellavance is called to testify as a witness, the

5

confidentiality agreement between Gordon and Bellavance adequately protects Bellavance; (3) Gingras is entitled under the Sixth Amendment to counsel of his choice; and (4) Bellavance and Gingras knowingly, intelligently and voluntarily waived any interest they have that might be compromised by Gordon's representation.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The United States Supreme Court has construed the Sixth Amendment right to counsel as giving "a defendant . . . a fair opportunity to secure counsel of his own choice." Powell v. Alabama, 287 U.S. 45, 53 (1932). The Court of Appeals for the First Circuit has held that "disqualification of . . . counsel should be a measure of last resort [and] [t]he government bears a heavy burden in demonstrating that [disqualification] is justified." In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988) (internal quotation and citation omitted) (holding that district court should not have disqualified attorney in the absence of evidence suggesting that the

6

attorney's former client, an immunized witness, had any incriminating information regarding the attorney's current client). In addition to affording defendants the right to counsel of their own choice, however, the Sixth Amendment includes "a correlative right to representation that is free from conflicts of interests." Mountjoy v. Warden, N.H. State Prison, 245 F.3d 31, 36 (1st Cir. 2001) (quoting Wood v. Georgia, 450 U.S. 261, 271 (1981)).

A criminal defendant's right to choose his or her own attorney necessarily is subject to limitations. See Wheat v. United States, 486 U.S. 153, 159 (1988) (affirming district court's refusal to accept client's waiver of attorney's simultaneous representation of co-defendants and three additional co-conspirators in a complex drug trafficking case). A defendant's right to choose particular counsel should normally be overridden if, for example, his or her selection would create a conflict of interest. United States v. Lanoue, 137 F.3d 656, 663 (1st Cir. 1998). However, in the event that "defense counsel has a conflict . . . the court may sometimes allow the attorney to continue with the representation if the defendant makes a

7

voluntary, knowing, and intelligent waiver." Mountjoy, 245 F.3d at 36.

With respect to issues such as conflict of interest, "the district court is vested with the power and responsibility of supervising the professional conduct of attorneys appearing before it." Kevlik v. Goldstein, 724 F.2d 844, 847 (1st Cir. 1984). Substantively speaking, "[t]he standards for Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the New Hampshire Supreme Court." LR 83.5, DR-1. Both parties agree that whether Attorney Gordon's representation of Gingras in this case will create a conflict of interest is governed by N.H. R. PROF. CONDUCT 1.9, which provides in relevant part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation and with knowledge of the consequences.
>
> . . . .

(c) A lawyer who has formerly represented a client in a matter . . . shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

The New Hampshire Supreme Court has held that:

A Rule 1.9 violation is established by proof of four elements. First, there must have been a valid attorney-client relationship between the attorney and the former client. Cole v. Ruidoso Mun. Schools, 43 F.3d 1373, 1384 (10th Cir. 1994). Second, the interests of the present and former clients must be materially adverse. Kaselaan & D'Angelo Associates, Inc. v. D'Angelo, 144 F.R.D. 235, 238 (D.N.J. 1992). Third, the former client must not have consented, in an informed manner, to the new representation. N.H. R. Prof. Conduct 1.9(a); see Wellman v. Willis, 400 Mass. 494, 509 N.E.2d 1185, 1188 (Mass. 1987). Finally, the current matter and the former matter must be the same or substantially related. Kevlik v. Goldstein, 724 F.2d 844, 850-51 (1st Cir. 1984); see Restatement (Third) of the Law Governing Lawyers § 213 (Tent. Draft No. 4, 1991).

9

<u>Sullivan County Regional Refuse Disposal Dist. v. Town of</u>
<u>Acworth</u>, 141 N.H. 479, 481-82 (1996).

When "all of the elements of Rule 1.9 have been satisfied, a court must irrebuttably presume that the attorney acquired confidential information in the former representation" and disqualification is required. <u>Id.</u> at 483 (citations omitted). On the other hand, failure by a party moving for disqualification to satisfy all four elements of Rule 1.9 does not end the court's inquiry. For example, execution of waivers by all criminal defendants potentially affected by conflicts of interest arising from multiple representation does not necessarily compel a court to permit such representation because "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." <u>Wheat</u>, 486 U.S. at 160.

Here, disqualification is not warranted because: (1) a material element of a Rule 1.9 violation is not established; and (2) neither fairness nor the appearance of fairness of Gingras's

10

trial will be compromised by allowing Gordon to serve in a limited role as co-counsel to Gingras.

It is undisputed that the first, second, and fourth elements of a Rule 1.9 violation have been shown. But Bellavance has given knowing, informed, and voluntary consent to Attorney Gordon's limited representation of Gingras, under circumstances that fully protect his own rights to confidentiality. The record discloses that Bellavance provided Attorney Gordon with his informed consent, and the government has offered no reason to think that Bellavance's consent does not qualify as "informed consent." Attorney Gordon's June 6, 2002, letter to Bellavance fully informed him of potential conflict issues related to his proposed representation, and Gordon provided Bellavance with copies of the applicable provisions of the New Hampshire Rules of Professional Conduct, suggesting that Bellavance consult with an attorney prior to signing the waiver and consenting to his representation of Gingras. Given Gordon's rather thorough disclosure and Bellavance's documented consent, as well as the protective limitation placed on Gordon's representation, agreed to by both Bellavance and Gingras, no violation of Rule 1.9 is

11

apparent, relative to Bellavance.  (Bellavance, of course, has not agreed to any disclosure of information protected by the attorney-client privilege, and Gordon has specifically agreed not to disclose such information.)

The government next contends that even if Gordon's representation of Gingras does not create a disqualifying conflict of interest under Rule 1.9, he should nevertheless be disqualified in the interest of protecting the integrity of the trial process.  Specifically, the government argues that Attorney Gordon's representation of Gingras would subject a guilty verdict in Gingras's trial to a challenge on ineffective assistance of counsel grounds, given the similarities between this case and Lanoue, 137 F.3d 656.  In Lanoue, a criminal defendant chose the same attorney who had represented a codefendant in an earlier trial.  Id. at 663.  The government moved to disqualify the attorney because the government intended to call the previously represented codefendant as a witness in the defendant's trial.  Id.  Despite the fact that both the codefendant and Lanoue had "waived any right to conflict-free representation" and the codefendant "submitted an affidavit" claiming that he had no

12

information concerning the matters about which the government proposed to have him testify, the court nevertheless disqualified the attorney from representing Lanoue. Id. The court reasoned that although the circumstances of the case represented the "outer limits" of a potential conflict, it was necessary to disqualify counsel because if a conflict did arise "the defendant may not receive the representation to which he is entitled, resulting in an ineffective assistance of counsel appeal." Id. at 664.

This case is markedly different from Lanoue. In Lanoue, the defendant apparently was represented by one attorney, the one whose potential conflict might serve to deny him effective representation. Here, however, Attorney Gordon will serve as co-counsel to Gingras's lead counsel, Attorney Weinberg. In the event Bellavance is actually called as a government witness and testifies, Gordon, as he fully informed both Gingras and Bellavance, will neither participate in cross-examining Bellavance nor consult with Attorney Weinberg regarding the preparation of such cross-examination, nor will he reveal any privileged information derived from his representation of

13

Bellavance. Those limitations fully protect Bellavance, and will not interfere with Gingras's constitutional right to the effective assistance of counsel. Attorney Weinberg, as lead counsel, is entirely capable of providing effective representation in all respects. To the extent Gordon provides legal assistance to Gingras without compromising Bellavance's interests, as Gingras has agreed, Bellavance is not prejudiced and Gingras is benefitted, and, of course, Gingras can lay no claim to Gordon's unfettered representation or to access to privileged information Gordon may have obtained during his representation of Bellavance. He has no right to either Gordon's representation, if it involves a conflict, nor to information protected by the attorney-client privilege.

And, there is no appearance of impropriety of institutional significance, two critical factors: 1) Gingras fully understands and accepts the limitation on Gordon's assistance, and 2) Attorney Weinberg is primarily responsible for and capable of providing entirely independent and entirely conflict-free representation.

14

Of course, the defendant should be prepared to personally respond, on the record, to relevant questioning by the court related to these issues, prior to trial. But, assuming defendant understands and accepts the limitation on Attorney Gordon's ability to serve, as seems established by the record, disqualification will not be ordered.

**CONCLUSION**

Because the elements of N.H. R. PROF. CONDUCT 1.9 are not established, and because the circumstances do not pose a risk of ineffective assistance of counsel, or any other threat to the integrity of the trial process, the government's motion to disqualify Attorney Gordon (document no. 33) is denied.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

September 23, 2002

15

cc: Mark A. Irish, Esq.
    Steven M. Gordon, Esq.
    Martin G. Weinberg, Esq.
    Kevin E. Sharkey, Esq.
    Stephen T. Jeffco, Esq.
    Thomas J. Butters, Esq.
    U.S. Probation
    U.S. Marshal