**Peggy A. SCHWARTZ, Plaintiff,**

v.

**BAY INDUSTRIES, INC., and Daniel Schmidt, Defendants.**

No. 02–C–832.

United States District Court, E.D. Wisconsin.

July 21, 2003.

Andrew P. Campbell, Cinda R. York, Birmingham, AL, Rebecca L. Salawdeh, Milwaukee, WI, for Plaintiff.

Cari Lynn Westerhof, Wausau, WI, for Defendants.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Peggy Schwartz brings this action against her former employer, Bay Industries, Inc. ("Bay"), and its employee, Daniel Schmidt ("Schmidt"), alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and retaliation for filing a discrimination charge with the EEOC in violation of 42 U.S.C. § 2000e–3. She also brings state law claims of intentional inflic-

tion of emotional distress ("IIED") and negligent hiring, training and supervision. Pursuant to Fed.R.Civ.P. 12(b)(6), defendants now move to dismiss plaintiff's retaliation claim because it was not included in an EEOC charge, and her IIED claim because it is untimely and inadequately pled.[1]

## I. MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. A complaint, or portion thereof, may be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff cannot adduce any set of facts in support of her claims that would entitle her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *GE Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even accepting all of her alleged facts, she has no legal claim. *Payton v. Rush–Presbyterian St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999). In reviewing a complaint under this standard, the court must accept as true the plaintiff's allegations, *Hosp. Bldg. Co. v. Rex Hosp. Tr.,* 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), and construe the complaint in the light most favorable to the plaintiff, resolving all doubts in her favor, *Jenkins v.*

*McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that in 1990 Bay hired her as a full-time employee in its Green Bay office. Schmidt was Bay's corporate vice president and plaintiff's direct supervisor. Between six months and one year after she was hired, Schmidt grabbed, fondled and kissed plaintiff after a chance encounter at a restaurant. Plaintiff rebuffed his advances and left the restaurant through the back door.

Following this incident, Schmidt treated plaintiff coldly at work. Plaintiff decided to avoid company functions because she was afraid Schmidt would harass and humiliate her. However, plaintiff became concerned that her failure to attend such functions would hurt her career, so she resumed attendance.

In 1992, during a company retreat, Schmidt pulled plaintiff into a room and attempted to fondle and kiss her. She resisted, after which Schmidt demeaned and ignored her at work, and subjected her to rude and offensive comments and notes.

In 1998 or 1999, during another company retreat, Schmidt again fondled plaintiff without her permission. Plaintiff again rebuffed him and left the function. In June 1999, Schmidt aggressively and roughly grabbed plaintiff's breasts and crotch without her consent.

---

1. Defendants originally moved to dismiss plaintiff's Title VII and negligent hiring and supervision claims against Schmidt because such claims do not lie against individual supervisors. *See Williams v. Banning,* 72 F.3d 552, 555 (7th Cir.1995) (holding that supervisors are not "employers" covered by Title VII); *Miller v. Wal–Mart Stores, Inc.,* 219 Wis.2d 250, 260–63, 580 N.W.2d 233 (1998) (stating that claim of negligent training and

supervision is brought against employer for breaching its duty to properly train and supervise employees). Plaintiff responded that these claims were not brought against Schmidt individually. Therefore, I need not address the issue. Defendants also argued that plaintiff's state law claims were preempted by Title VII but subsequently withdrew the argument.

Throughout her employment at the Green Bay office, Schmidt stared down plaintiff's shirt and rubbed up against her. He also used inappropriate titles such as "sweetheart" to address her.

In June 2000, as a result of her failure to accede to Schmidt's advances, plaintiff was transferred to Birmingham, Alabama. Schmidt threatened that if she left the company she would never find work in the area or the industry again. Plaintiff was one of just two employees in the Birmingham office, was cut off from the company, and found her duties greatly reduced. The other employee was soon terminated, further isolating plaintiff.

Shortly after plaintiff's arrival in Birmingham, Schmidt visited the office and stated that he did not need a hotel room because he would be staying with her. Plaintiff refused, after which her duties were further reduced, and Schmidt told her not to contact anyone at the company without his approval.

During a November 2000 company retreat, Schmidt again told plaintiff he would be spending the night with her, and she again rejected this suggestion.

On August 15, 2001, plaintiff was terminated.

### III. PROCEDURAL HISTORY

On April 6, 2001, plaintiff filed a charge of discrimination against defendants with the EEOC. In the section of the form relating to the nature of the charge, plaintiff checked the boxes for "sex" and "retaliation." In the charge, plaintiff alleged that Schmidt had sexually harassed her and that she had been transferred and given reduced responsibilities because she had rebuffed him.

After being terminated, plaintiff did not file a new EEOC charge or amend her previously-filed charge to include the fact of her termination.

Plaintiff obtained a "right to sue letter" from the EEOC and, on December 5, 2001,[2] filed the present action in the District Court for the Northern District of Alabama alleging (1) sexual harassment, (2) assault and battery, (3) invasion of privacy, (4) outrage, and (5) negligence/wantonness. Pursuant to defendants' motion, venue was subsequently transferred to this district.

Plaintiff then moved for and was granted permission to amend her complaint. On December 19, 2002, plaintiff filed her second amended complaint alleging the claims set forth above.

### IV. DISCUSSION

#### A. Retaliation Claim

 As a general rule, a Title VII plaintiff may not bring claims in court that were not included in an EEOC charge. *Cheek v. W. & So. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994). Although the requirement that a plaintiff file an EEOC charge is not jurisdictional, it is a condition precedent to bringing a Title VII action. *Id.* The requirement is said to serve two purposes—it affords the EEOC and the parties a chance to settle the dispute, and it gives to the employer notice of the offending conduct. *Id.*

 Recognizing that most EEOC charges are drafted by non-lawyers, courts do not require the plaintiff to allege in an EEOC charge all of the facts involved in her claims.

The test for determining whether an EEOC charge encompasses the claims in a complaint therefore grants the Title VII plaintiff significant leeway: all Title VII claims set forth in a complaint are

**2.** In their briefs, the parties incorrectly state that the filing date was December 1, 2001.

cognizable that are like or reasonably related to the allegations of the charge and growing out of such allegations. Thus the test ... is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.

*Id.* (internal citations and quote marks omitted).

Plaintiff's retaliation claim is based on the allegation that defendants fired her because she filed an EEOC charge. Defendants argue that this claim must be dismissed because plaintiff's termination was not mentioned in an EEOC charge. Plaintiff indicates that she did allege retaliation in her charge related to the events that occurred prior to its filing—her transfer to Birmingham and Schmidt's conduct after she refused his advances. She also notes that she checked the "retaliation" box on the charge form.

■ However, plaintiff's EEOC charge did not actually allege a retaliation claim. In order to establish a Title VII retaliation claim, the plaintiff must show that she engaged in statutorily protected activity and that as a result the employer retaliated against her. *Johnson v. Milwaukee Sch. of Eng'g,* 258 F.Supp.2d 896, 905 (E.D.Wis.2003). "Statutorily protected activity" includes the filing or participation in the filing of a charge ("participation conduct") or opposition to discrimination ("opposition conduct"). *See, e.g., Speedy v.*

*Rexnord Corp.,* 243 F.3d 397, 404 n. 4 (7th Cir.2001).

■ Plaintiff's EEOC charge does not allege either form of protected activity. The allegations that she was transferred to Alabama and that Schmidt treated her coldly after she rebuffed his advances seem to state a claim of quid pro quo sexual harassment rather than retaliation. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (stating that quid pro quo harassment occurs when a tangible employment action resulted from the refusal to submit to sexual demands).[3] Plaintiff nowhere alleges that these (or any other actions) were taken against her because she complained of or opposed discrimination, formally or informally. Therefore, the EEOC charge did not allege retaliation relating to events occurring prior to plaintiff's termination. Further, even if she had alleged protected activity in the charge, she did not mention her termination, which is the basis for her present retaliation claim.

■ Nevertheless, plaintiff's retaliatory discharge claim is properly before me despite its omission from an EEOC charge. This is so because it is " 'unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge.' " *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 482 (7th Cir.1996) (quoting *Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir.1981)); *see also Clockedile v. New Hampshire Dep't of Corr.,* 245 F.3d 1, 4 (1st Cir.2001) (noting that most circuits

---

**3.** Although not controlling for purposes of employer liability, *id.* at 754, generally speaking, there are two types of sexual harassment—quid pro quo and hostile environment. As noted, the former exists when the employer links an employee's conditions of employment to submission to sexual advances. The latter exists when severe and pervasive conduct of a sexual nature creates a hostile or offensive working environment, regardless of whether any tangible or economic employment action is taken again the employee. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Plaintiff seems to allege both types.

have permitted retaliation claims where only the discrimination charge was made to the agency, and collecting cases from every Circuit but the D.C.); Kelly Koenig Levi, *Post Charge Title VII Claims: A Proposal Allowing Courts to Take "Charge" When Evaluating Whether to Proceed or to Require a Second Filing,* 18 Ga. St. U.L.Rev. 749, 768–69 (2002) (noting that most courts have allowed claims of retaliation based on the act of filing the original charge despite the failure to include the retaliation claim in a charge).

In *Gupta,* the court explained that

[t]here are strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII. We are reluctant to erect a needless procedural barrier to the private claimant under Title VII, especially since the EEOC relies largely upon the private lawsuit to obtain the goals of Title VII. Intertwined with this practical reason for our holding is a strong policy justification. Eliminating this needless procedural barrier will deter employers from attempting to discourage employees from exercising their rights under Title VII.

654 F.2d at 414 (citations omitted).

In adopting this rule, the Seventh Circuit stated that

there is a practical reason for treating retaliation in this way: having once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation. That is not a consideration in this case, where the alleged act of retaliation consisted of firing [the plaintiff]; there was nothing more that [the defendant] could do to him if he filed another administrative charge. But it is best to have a general rule, and we join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge.

*Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1312 (7th Cir.1989), *superseded on other grounds by statute as stated in Rush v. McDonald's Corp.,* 966 F.2d 1104, 1119–20 (7th Cir.1992).[4]

It is not immediately apparent why a Title VII plaintiff should not be required to file or amend a previously filed EEOC charge to include a claim of retaliatory discharge. As noted in *Malhotra,* there is little more an employer can do to the now-discharged employee.[5] However, as suggested in *Gupta,* there are practical and policy reasons for the rule.

If, prior to being terminated, a plaintiff has already commenced a lawsuit based on the original charge, it would serve no useful purpose to require her to go back to the EEOC to file a retaliation charge, exhaust administrative remedies and then amend her complaint. The settlement func-

---

**4.** The Seventh Circuit has limited the rule to claims based on retaliatory acts committed after the filing of the EEOC charge. *McKenzie,* 92 F.3d at 482–83.

**5.** It is inaccurate to say that there is *nothing* more the employer can do; it can provide

negative employment references or otherwise impede the plaintiff's ability to get another job. This can itself constitute actionable retaliation. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

tion of the administrative process would not be served because the parties would already be in court. Neither would the notice function be served because the defendant would already know that it had fired the plaintiff. The likely effect of imposing a new filing requirement would be to delay the lawsuit while the plaintiff went through the motions of exhausting.

If a plaintiff is terminated after receiving a ninety-day right to sue letter but before commencing suit, it would also be pointless to require her to file a new EEOC charge. The ninety-day limitation period would likely expire before the agency processed the new charge. Thus, the plaintiff would have to sue based on the original charge, exhaust administrative remedies on the retaliation charge, and then amend her complaint or file a new lawsuit to allege retaliation. No purpose would be served "except to create additional procedural technicalities." *McKenzie*, 92 F.3d at 482.

Finally, if the plaintiff is terminated while her discrimination charge is pending before the EEOC,[6] it is reasonable to assume that the agency will become aware of the termination in the course of its investigation.[7] The parties could then avail themselves of the EEOC's processes concerning both the discrimination and retaliation claims.[8]

Thus, in all cases involving retaliatory discharge claims, single filing "promotes judicial economy, protects the intended recipient of the statute, and simultaneously ensures that the defendant is able to defend the claim of retaliation." Levi, *supra*, at 771 (footnotes omitted). Therefore, plaintiff's retaliation claim may proceed.

Defendants argue that plaintiff may not avail herself of the *McKenzie* rule because in that case "the allegations of harassment and discrimination were reasonably related to each other [whereas here] they are not." (R. 33 at 3.) Defendants misread *McKenzie*. In *McKenzie*, the plaintiff filed a sexual harassment charge, which she later amended to add additional allegations of discrimination. 92 F.3d at 478. She then

---

6. This is apparently what happened in the present case.

7. Appearing as amicus curiae in *Clockedile*, the EEOC advised the court that "it is 'likely' that the alleged retaliation against Clockedile for filing her charge would 'have been uncovered in a reasonable EEOC investigation' of the charge." 245 F.3d at 4. Nevertheless, the better practice is to amend the charge to include the retaliation claim for it enables plaintiffs to avoid the kind of issue raised in the present motion.

8. Professor Levi states that "[e]ven without requiring the complainant to file a charge of retaliation, it is evident the defendant has notice of the act in which it engaged as a direct result of the filing.... As a result, the defendant's ability to defend the claim and initiate voluntary settlement or conciliation attempts with the EEOC prior to the start of litigation is in no way prohibited or impeded by the absence of a second filing. Even if the EEOC does not investigate, the defendant has

notice and can initiate discussions directly with the plaintiff." Levi, *supra*, at 770–71. This is surely correct when the retaliation takes the form of a discharge. However, where the retaliatory act is less blatant or where it is carried out by a mid or lower-level employee, a defendant might not have notice of it. In that situation, requiring the employee to file a second charge could serve the purposes of administrative exhaustion, i.e., to provide notice to the defendant and allow the parties to avail themselves of the EEOC's conciliation procedures. However, the Seventh Circuit has not limited the rule to retaliatory discharges; so long as the retaliation occurs after the filing of the charge, a new charge need not be filed. Such a broad rule still makes sense, though, because it brings clarity to an uncertain area of the law and, as noted in *Malhotra*, plaintiffs still on the job who suffer from retaliation may well be "gun shy about inviting further retaliation by filing a second charge." 885 F.2d at 1312. Thus, the rule serves the primary purpose of Title VII—protection of equal employment opportunity.

brought an action in court, alleging retaliation based on the filing of the charges. *Id.* Notwithstanding her failure to mention retaliation in her EEOC charge, the court permitted her retaliation claim to go forward.

█ The court stated that " 'a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge.' " *Id.* at 483 (quoting *Malhotra*, 885 F.2d at 1312). This is so, the court said, because claims of retaliation for filing a charge are considered to be "reasonably related" to that filing. *Id.* (citing *Bouman v. Block*, 940 F.2d 1211, 1229 (9th Cir.1991)) (finding that retaliation claim was "reasonably related" to prior sex discrimination claim); *Brown v. Hartshorne Public Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir.1988) (stating that "an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint"); *see also Portlock v. Painewebber, Inc.*, No. 85–C–6247, 1987 WL

6293, at \*1 (N.D.Ill. Feb. 4, 1987) ("It is difficult to imagine a claim more related to a charge and growing out of it than a claim that one was fired for filing that charge.").[9]

The *McKenzie* court then noted that the rule is limited to retaliatory acts that occurred after the filing of the charge, *id.* at 482–83, and held:

> In this case, Ms. McKenzie alleges several retaliatory acts, and two of those acts occurred prior to her filing of her original EEOC charge. Yet Ms. McKenzie did not mention her claims of retaliation in either her original charge against IDOT or her amended charge filed several months later. Because each of those incidents of retaliation could have been—and should have been—included in her administrative charges, they cannot now serve as the basis of the retaliation claim alleged in her complaint. [H]owever, the remaining incidents (i.e., those occurring after the filing of the February 1991 amended charge) may be considered as evidence

---

9. With respect, courts holding that claims of retaliation for the filing of a charge are reasonably related to or grow out of that charge appear to confuse those concepts with the causation element of a retaliation charge. The "reasonably related to/arising out of" rule was designed to protect employees uneducated in the law. As the court stated in *Sanchez v. Standard Brands, Inc.*, one of the first cases to address the issue: "It is more important that pleading rules be relaxed in the decidedly informal atmosphere of Title VII. Since the Act involves a lay initiated proceeding, it would be out of keeping with the Act to import common-law pleading niceties to [the charge of discrimination] or in turn to hog-tie the subsequent lawsuit to any such concepts. This Act was designed to protect a worker from becoming an industrial pariah, and his lack of literary acumen should not stymie his quest for equal employment opportunity." 431 F.2d 455, 465 (5th Cir. 1970) (internal citations and quote marks omitted, alteration in original). Thus, the employee may raise in court—where she pre-

sumably will be represented by counsel—claims and allegations sufficiently similar to those raised in her charge. The test for determining whether the newly added claims are sufficiently similar typically focuses on (1) whether the new claims arise from the same factual basis as the claims in the charge, i.e. whether they involve the same individuals and the same basic conduct, *see Cheek*, 31 F.3d at 501; Levi, *supra*, at 765; and (2) whether the new claims were or would have been uncovered in a reasonable EEOC investigation, Levi, *supra*, at 761–62. Claims of retaliatory discharge would seem to fail this test—clearly they allege different conduct from that raised in the charge. Retaliation is not *related* to conduct described in a charge just because it was *motivated* by the filing of the charge. The better rationale for allowing retaliation claims to be raised without a second agency charge is that outlined above—judicial economy and the protective purposes of Title VII are advanced with little or no harm to the purposes of administrative exhaustion.

of Ms. McKenzie's retaliation claim, despite the fact that "retaliation" was not alleged in her administrative filings.

*Id.* Therefore, contrary to defendants' contention, the only relationship between an EEOC charge and a retaliation claim *McKenzie* requires is that the charge be the motive for the retaliation. *See also Clockedile*, 245 F.3d at 4 ("[R]etaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—e.g., the retaliation is for filing the agency complaint itself.").

Defendants also rely on *Jansen v. Packaging Corp. of America*, 123 F.3d 490, 493 (7th Cir.1997), *aff'd*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), where the court affirmed the dismissal of retaliation claims because "[s]ome of the alleged acts of retaliation [were] outside the scope of Jansen's EEOC charge and [were] therefore waived." However, *Jansen* did not even discuss the *Gupta/Malhotra/McKenzie* rule, much less re-impose an exhaustion requirement on claims of retaliation. Rather, it appears that in *Jansen* the plaintiff filed an administrative charge of retaliation then sought to include additional instances of retaliation in her federal complaint that fell outside the charge's scope.

Finally, defendants note that plaintiff did not bring a retaliation claim in her original federal complaint and argue that she should not be permitted to do so now. However, I previously allowed plaintiff to amend; defendants do not ask me to revisit that decision; nor do they claim that the amendment is improper under Fed R. Civ. P. 15 or 18.

Therefore, for the reasons stated, defendants' motion to dismiss plaintiff's retaliation claim will be denied.

## B. Intentional Infliction of Emotional Distress Claim

■ Defendants argue that I should dismiss plaintiff's IIED claim because it is untimely and because plaintiff has failed to plead sufficient facts to support it. To establish an IIED claim, the plaintiff must show that the conduct complained of was (1) intended to cause emotional distress, (2) extreme and outrageous, (3) the cause of the plaintiff's emotional distress, and (4) the resultant distress was severe and disabling. Wis. JI–Civil 2725; *see also Rabideau v. City of Racine*, 243 Wis.2d 486, 501, 627 N.W.2d 795 (2001); *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 694–95, 271 N.W.2d 368 (1978); *Alsteen v. Gehl*, 21 Wis.2d 349, 359–60, 124 N.W.2d 312 (1963). The statute of limitations for an IIED claim is two years. Wis. Stat. § 893.57.

■ Defendants argue that plaintiff has failed to plead sufficient facts within the relevant two year period to support an IIED claim. Under the liberal pleading standards of the Federal Rules of Civil Procedure, defendants ask too much. "Federal notice pleading requires the plaintiff to set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999). A complaint need not spell out every element of a legal theory to provide notice; it need only contain enough to allow the defendants to understand the gravamen of the plaintiff's complaint. *Id.* at 951–52; *cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that an employment discrimination plaintiff need not plead a prima facie case to survive a motion to dismiss). In fact, Fed. R.Civ.P. 8(a) does not require a plaintiff to plead a legal theory at all. *B. Sanfield*,

*Inc. v. Finlay Fine Jewelry Corp.,* 168 F.3d 967, 973 (7th Cir.1999).

Neither must the plaintiff plead facts. "It is enough to specify the wrong done and leave details to later steps, such as motions for more definite statement, Fed. R.Civ.P. 12(e), and affidavits concerning summary judgment." *Palmer v. Bd. of Educ.,* 46 F.3d 682, 688 (7th Cir.1995); *see also Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.,* 132 F.3d 526, 529 (9th Cir.1997) (stating that plaintiff is "not required to allege in its complaint the evidentiary facts in support of its theory of recovery").

 The Seventh Circuit has repeatedly emphasized that aside from those few claims specified in Fed.R.Civ.P. 9(b), there are no heightened rules of federal pleading. *Tierney v. Vahle,* 304 F.3d 734, 742 (7th Cir.2002). No more is required than Rule 8's notice pleading minimum. *Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir.2001). Thus, district courts must not dismiss a claim under Rule 12(b)(6) just because it could have been stated with more particularity or because the judge believes the plaintiff unlikely to prevail. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Courts should also be hesitant to dismiss a claim on technical grounds in view of the policy of the federal rules to determine actions based on the merits. Finally, early dismissals may, in the long run, result in a waste of judicial time if on appeal the dismissal is reversed and remanded. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 324 (1990).

Based on the foregoing principles, plaintiff's complaint is sufficient. Plaintiff alleges that Schmidt's conduct was intended to and in fact caused severe and disabling emotional distress. She alleges that in the two years before she filed suit Schmidt propositioned her at least twice, repeatedly tried to look down her shirt and rub up against her, transferred her when she refused his advances, treated her with hostility, threatened that if she left the company she would never work in the industry again, instructed her not to contact anyone at the company without his permission, and then terminated her. Thus, her complaint states an IIED claim, even limited to post-December 5, 2001 allegations.[10]

Finally, defendants argue that plaintiff's complaint fails because if she had in fact sustained severe and disabling emotional distress, she would not have continued to work for Bay. However, this type of argument is appropriately addressed after the facts are more fully developed, i.e., on summary judgment or at trial.

Thus, defendants' motion to dismiss plaintiff's IIED claim will be denied.

## V. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' motion to dismiss is **DENIED**.

---

10. Plaintiff argues that I may consider conduct that occurred prior to December 5, 1999 under a "continuing violation" theory. The continuing violation theory originated in Title VII harassment claims and may not apply to state law claims. However, I need not resolve the issue to decide the motion.