**Madeline MILLET, et. al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF THE ARMY, et. al., Defendants.**

**Civil No. 02–2431 (DRD).**

United States District Court, D. Puerto Rico.

Oct. 18, 2002.

Order on Reconsideration Dec. 13, 2002.

Frank D. Inserni–Milam, San Juan, PR, for Plaintiffs.

Fidel A. Sevillano–Del–Rio, Torre Chardon, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is a motion for temporary restraining order and preliminary injunction filed by plaintiffs, on September 20, 2002. Docket No. 2. For the reasons stated below, the motion is denied.

# I

## INTRODUCTION

Plaintiff instituted this action for a declaratory judgment and injunctive relief against the United States [1] pursuant to the Fifth Amendment of the United States Constitution, 28 U.S.C. § 1331, 28 U.S.C. 1346; the Administrative Procedure Act (APA), 5 U.S.C. § 702; the Rehabilitation Act of 1973, 29 U.S.C. 794; and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* Pending before the Court is defendant's motion to dismiss and plaintiff's opposition thereto. A Show Cause hearing was held before this court concerning this action on October 7 and 8, 2002. The Court received testimonial as well as documentary evidence from both parties to this action.

The Plaintiff is a general schedule grade six (GS–6) civilian employee for the Department of the Army working at Fort Buchanan, Puerto Rico. Prior thereto Plaintiff was a non-commissioned officer for twenty-one years, voluntarily retiring as a Sergeant 1st Class, effective January 1, 2002. She brings this action on behalf of her minor children Fabien Neely and Madeline Millet. As a current civilian employee she prays that this Court order the re-enrollment of those children into the Antilles Consolidated School System operated by the defendant Department of Defense. The Antilles Consolidated School System (ACSS) is operated by the Department of Defense Domestic Dependent Elementary and Secondary Schools (DDESS), pursuant to 10 U.S.C. § 2164.[2]

The fundamental facts in this case as set forth in the pleadings and evidenced at the Show Cause hearing, are not in dispute. Rather, the issue to be decided by this Court is whether an inadvertent enrollment of the Plaintiff's minor children in ACSS of a few hours in a day creates a legal entitlement or a property interest to continued enrollment which the Defendants should be permanently enjoined from terminating. For the reasons set forth below, this Court declines to find that the accidental and temporary enrollment which occurred in this case created a legal entitlement or a protected property interest to continued enrollment enforceable by the Federal judiciary.

# II

## THE PROVEN FACTS

1. Plaintiff Madeline Millet served as an enlisted member of the United States Army for approximately 21 years. Her last assignment was to Fort Buchanan, Puerto Rico, in 1999. She retired voluntarily from active duty, effective January 1, 2002. In conjunction with her military assignment to Puerto Rico, she enrolled her dependant children in ACSS. That is, she enrolled her children in the Fort Buchanan base schools operated by DDESS. During 2001, her last year of active duty, Plaintiff requested that she be granted a waiver to the established student eligibility rules for ACSS so that her dependants could continue to attend school on Fort Buchanan after her retirement.

2. By letter dated November 16, 2001, Plaintiff was advised by the Department of

---

1. The named Defendants are the United States Department of the Army, The United States Department of Defense, the Domestic Dependent Elementary and Secondary Schools (DDESS) operated by the Department of Defense, The Antilles Consolidated School System (ACSS) operated by DDESS in

Puerto Rico, and multiple officials of those agencies named in their official capacity.

2. DDESS is organizationally aligned under the Department of Defense Education Activity (DoDEA). *See* 20 U.S.C. § 922.

Defense Education Activity that she had lost statutory eligibility to continue sponsorship of her dependents in ACSS. (Joint Exhibit III). She could enroll her children if she joined her husband who was serving in the military and stationed in Colorado. While Plaintiff did not receive the blanket exemption from eligibility requirements for ACSS that she requested, plaintiff was granted two limited waivers for her dependents pursuant to statutory and regulatory provisions set forth more fully further in this decision. That is, her eldest dependent, Yeleen, was granted a "Rising Senior" exception that permitted this student to continue enrollment for the 2002–2003 academic year and complete her final year of High School at ACSS. Likewise, a younger dependent, Fabien, was permitted to complete the 2001–2002 school year, even though her sponsor (plaintiff) had retired from active duty at the end of calendar year 2001, in the middle of the academic school year. (Joint Exhibit III).

3. After her retirement from active military service, plaintiff gained employment as a general schedule, grade four, civil service employee, with the Department of the Army, at Fort Buchanan, in July of 2002. (Plaintiff's Exhibit 6, p. 3.) Plaintiff testified that she petitioned the Department of the Army, Headquarters, United States Army South, to designate her position as being one subject to a policy and practice of transfer. Because plaintiff was no longer an active duty military member, this determination of "trans-

ferability" was pivotal to her regulatory eligibility to sponsor dependants for enrollment in ACSS as a civilian employee. By decision dated August 21, 2002, the Army denied this request (plaintiff's Exhibit 1).[3]

4. By letter dated 21 August 2002, the Plaintiff submitted an application to Dr. Elaine B. Hinman, the Director of DDESS, seeking once again to be granted a waiver of established eligibility rules on behalf of all of her dependent children, eligibility that she had lost when she retired from active duty military service. In her request for reconsideration, the Plaintiff asserted she had regained eligibility for her dependents to attend ACSS as she had obtained Federal civilian employment with the Department of the Army. Plaintiff's request for reconsideration included a letter of from her senior level supervisor, Colonel Alcides Velez, Jr., which unequivocal declared that "Ms Millet's position is subject by policy and practices to transfer or reassignment to a location where the English language is the language of instruction in schools normally attended by dependant children of Federal personnel."

5. Plaintiff testified that she was verbally advised, on August 27, 2002, by Mr. Philip Deavel, Assistant General Counsel for the Department of Defense Education Activity, that if in fact the Army had certified her position as being "subject by policy and practices to transfer or reassignment," she would regain eligibility for ACSS. The Plaintiff testified that based

---

**3.** This decision letter declares that the Commander, U.S. Army South, "has disapproved Ms Millet's request to enroll her dependent children in the ACSS." However, the relevant law and regulations before this court as well as the testimony of Mr Philip Deavel, Assistant General Counsel for the Department of Defense Education Activity, establishes that individual military commanders as sponsors have no authority to grant or deny enrollment to ACSS. This authority belongs to the Secre-

tary of Defense and has been delegated to the Department of Defense Education Activity and its officials, not the military Departments. The individual Military Departments and other Federal Agencies do, however, have complete authority to determine which of their civilian employees are serving in "transferable" positions. In the present case before the Court, a denial of transferability status by the Army is tantamount to a denial of eligibility.

upon this information she thus enrolled her children in ACSS, on August 28, 2002.

6. However, Mr Deavel testified that on August 28, 2002, Major General Alfred Valenzuela, the Commander of United States Army South (USARSO), advised representatives of ACSS and DDESS of the following facts: First, that Colonel Velez had no authority to designate which civilian positions within his command were "transferable." Secondly, in accordance with written command directives, Colonel Velez should have addressed his memorandum to duly-delegated Army officials, for consideration only, and not directly to DDESS as an official Army decision. Lastly, Mr. Deavel testified that General Valenzuela advised him that Plaintiff's position had not in fact been designated as "transferable." [4]

7. Colonel Vélez testified at the hearing, and acknowledged that he had not been delegated authority to make civilian transferability decisions on behalf of the Army. Colonel Velez also testified that he had intended his letter only as a **personal recommendation** that Plaintiff's position should be designated as transferable, not as an official pronouncement by the Army: "I strongly recommend approval of Ms. Madelline Millet's request to enroll her daughters . . . in the Antilles Consolidated School System." *See* Joint Exhibit I, ¶ 1.

8. The Director of Personnel for USARSO, Colonel Simmons, testified at the Show Cause hearing and confirmed that Colonel Velez, as a logistics officer, had no authority to make official certifications of transferability on behalf of the Army.

9. Mr. Deavel also testified that he informed the Plaintiff on the same date that he spoke with Gen Valenzuela, advising her that the Army "certification" of transferability submitted with her request for reconsideration was made by an officer with no authority to make those determinations on behalf of the Army, and was therefore a nullity. Plaintiff accepted that she was advised on the same date by Mr. Deavel that Colonel Vélez had no authority to grant a certificate of transferability and, hence, the prior action taken that same date was rescinded and null. Based upon the testimony of both the Plaintiff and Mr Deavel, there is no question that plaintiff was advised, on the same date of August 28, 2002, that she must obtain valid certification of her position as "transferable" from the Army, if she was to continue the enrollment of her dependents in ACSS on the basis of her Federal civilian employment.[5] Her eldest daughter, Yeleen, remained "grand-fathered" to graduate under the "Rising Senior" exception authorized under the regulations.

10. By letter dated 5 September 2002, Dr. Elaine B. Hinman, the Director of DDESS, advised Plaintiff that as no valid certification of her position from the Department of the Army had been received, Plaintiff lacked eligibility to continue enrollment of her dependents, Fabien Neely and Anna Millet, in ACSS. (Joint Exhibit III). However, Plaintiff's dependents were not immediately disenrolled from ACSS. By letter dated 10 September 2002, the Assistant Superintendent of ACSS advised the Plaintiff that enrollment of her dependents would end effective 20 Septem-

---

**4.** The above historical rendition is set forth in Plaintiff's Exhibit 4, the 5 September 2002 decision letter of Dr. Elaine B. Hinman. It is apparent that Major General Valenzuela himself took the decision of determining that the position of plaintiff's GS–6, as a personal sec-

retary, was not "transferrable." The Board had already decided that the positions "transferable" were GS–8 or higher. *See* discussion *infra*.

**5.** *Id.*

ber 20002. Plaintiff's dependents Fabien Neely and Madeline Millet were in fact disenrolled, on 20 September 2002.

It is clear from the petition before the Court that the Plaintiff is attacking both the decision of the Army not to certify her position as transferable and the subsequent decision of DDESS to disenroll her dependents. As stated before, the main issue to be decided in this case is whether an inadvertent enrollment, not following proper delegated procedures, of the Plaintiff's minor children in ACSS of a few hours in one day, creates a legal entitlement or a property interest to continued enrollment which the Defendants should be permanently enjoined from terminating. In deciding this issue, the Court must examine several other matters, namely: first, whether the Court possesses jurisdiction; second, whether an injunction relief is proper, pursuant to the four-factored test established by the First Circuit; and third, whether plaintiffs have suffered illegal discrimination. We first analyze whether we have jurisdiction to entertain plaintiff's challenges to these decisions by Federal Agencies.

## III

### APPLICABLE LAW

*A. Sovereign Immunity*

 In order for a Federal Court to exercise jurisdiction over a claim against the United States, there must be a clear statutory waiver of sovereign immunity. "Absent a waiver, a sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (*citing Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988); *Federal Housing Administration v. Burr,* 309 U.S. 242, 244, 60 S.Ct. 488, 84 L.Ed. 724 (1940)). A suit against

an executive department of the United States, or against departmental employees in their official capacities, is a suit against the United States and is therefore subject to the defense of sovereign immunity. *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); *see also Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (suit against Federal officers in their official capacity is a suit against the United States).

 Only Congress can waive the sovereign immunity of the United States. *United States v. Testan,* 424 U.S. at 399, 96 S.Ct. 948. Waivers of sovereign immunity cannot be implied, but must be unequivocally expressed. *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (waiver of sovereign immunity "must be unequivocally expressed in the statutory text ... and will not be implied"). Moreover, even when Congress expressly waives the Federal Government's immunity from suit, that waiver must be strictly construed and must not be enlarged beyond the literal language of the statute. *Library of Congress v. Shaw,* 478 U.S. 310, 315–318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

 Sovereign immunity is jurisdictional in nature; without a clear waiver, a court has no jurisdiction over a claim against the United States or its agencies or officials. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

In the instant case, Plaintiff has brought suit against two Federal agencies and several Federal Defendants in their official capacity. Thus, the relief Plaintiff seeks— injunctive and declaratory relief—in effect

would operate against the United States. Accordingly, Plaintiff is required to seek redress against the Federal Government under the provisions of a claim that expressly waives the United States' immunity from suit. Plaintiffs, however, have failed to meet this fundamental burden. All of Plaintiff's claims fail as a matter of law because Plaintiff has not identified an applicable and relevant waiver of sovereign immunity, even though, as a federal employee, she was "required to set forth in the complaint the specific statute containing a waiver of the government's immunity from suit." *McLellan Highway Corp. v. United States*, 95 F.Supp.2d 1, 14 (D.Mass. 2000) (*citing Warminster Township Municipal Auth. v. United States*, 903 F.Supp. 847, 849 (E.D.Pa.1995); *Reeves v. United States*, 809 F.Supp. 92, 94 (N.D.Ga. 1992), *aff'd*, 996 F.2d 1232 (11th Cir.1993); *Swift v. United States Border Patrol*, 578 F.Supp. 35, 37 (S.D.Tex.1983)).[6]

### B. Due Process

 Plaintiff has sought a declaratory judgment and a permanent injunction against Defendants for the decision not to certify her minor dependents for enrollment in ACSS. In an apparent attempt to establish a claim under the Administrative Procedure Act (APA), Plaintiff alleges that the Army's decision not to certify her position as "transferable" was arbitrary and capricious. Furthermore, she asserts that the decision violates the Fifth Amendment, the Rehabilitation Act of 1973, the Individuals With Disabilities in Education Act (IDEA), and Title VII of the 1964 Civil Rights Act. Plaintiff seems to have failed

to state a claim upon which relief can be granted. Plaintiff's Fifth Amendment due process claim fails, as a threshold matter, because there is not statutory entitlement to any benefit. On the contrary, 10 U.S.C. § 2164 grants the Secretary of Defense ***discretion*** over whether to admit students into the Antilles Consolidated School System.

The eligibility requirements for enrollment in ACSS are specified in 10 U.S.C. § 2164 and the implementing DoD rules. *See* DoD Instruction 1342.26 (Mar. 4, 1997) (Joint Exhibit 1). The statute does not require DoD to enroll the children of military members or civilian employees in DDESS schools. Instead, that decision is left to the discretion of the Secretary of Defense. Thus, the statute provides that:

> The Secretary [of Defense] *may, at the discretion of the Secretary*, permit dependents of members of the armed forces and, to the extent provided in subsection (c), dependents of civilian employees of the Federal Government residing in a territory, commonwealth, or possession of the United States but not on our military installation, to enroll in an educational program provided by the Secretary pursuant to this subsection.

10 U.S.C. § 2164(a)(2) (Supp.2002) (emphasis added).

The statute, thus, does not require the Secretary of Defense to enroll children who satisfy statutory criteria—that decision is made "at the discretion of the Secretary." The statute merely sets forth conditions that must be met before the Secretary considers whether to exercise

---

6. As will be discussed, *infra*, the only potential waiver of sovereign immunity is found in § 702 of the Administrative Procedure Act (APA), 5 U.S.C. § 702. However, in her complaint, Plaintiff does not specifically cite the judicial review provisions of the APA as the basis of jurisdiction for this Court to review

Defendants' actions. In any event, the APA waives the sovereign immunity of the United States and allows for judicial review of federal agency actions in certain circumstances. But there are two exceptions which, as will be seen, apply to this case.

his discretion to admit the children of civilian employees. The Secretary of Defense has in fact utilized the discretionary authority given to him under this statute to establish specific rules and procedures defining eligibility requirements for DDESS enrollment. This has been accomplished through the promulgation of the Department of Defense Instruction (DoDI) 1342.26, *Eligibility Requirements for Minor Dependents to Attend Department of Defense Domestic Dependent Elementary and Secondary Schools (DDESS).* (Joint Exhibit 1). § B.1. of this Instruction expressly states its provisions cover the DoD dependent schools in Puerto Rico. § F.2.(2) of the Instruction defines the limited category of Federal civilian employees in Puerto Rico who are eligible to enroll their children in ACSS. This provision states in relevant part that only the following category of civilian employees are eligible: "Full-time civilian employees of the Federal Government, not residing in permanent quarters on a military installation, residing in a territory, possession or commonwealth, **who are subject by policy and practice to transfer or reassignment to a location where English is the language of instruction in the schools normally attended by dependent children of Federal personnel.**" (Emphasis ours.)

DoDI 1342.26 also unequivocally defines how Federal civilian employees must establish that they are in fact subject to a policy and practice of transfer. § F.3.d.(1) states, "The Agency employing the civilian sponsor shall provide a statement confirming the sponsor's position meets the eligibility requirements." Thus, 10 U.S.C. § 2164 neither establishes entitlement to Plaintiff's dependents' education at ACSS, nor creates a "protected property and liberty interest," as the Plaintiff has alleged. Accordingly, Plaintiffs fail to establish any constitutionally-protected property inter-

est; as such, their claim for due process must fail.

## C. Discrimination Claims

Plaintiff fares no better in her claims under various civil rights statutes, as to her discrimination claims. Plaintiff's discrimination claims fail essentially because she did not exhaust her administrative remedies, both as to the substantive discrimination and as to retaliation.

Plaintiff, Madeline Millet, alleges that she has been discriminated in employment and retaliated by Commanding General Valenzuela allegedly because the commanding officer does not appreciate the Puerto Ricans who came to Puerto Rico transferred from Panamá as part of the United States Army South.

■ The facts and the law do not favor Plaintiff. The court explains. Plaintiff first must exhaust EEOC procedures. The only EEOC claim made by Plaintiff alleging discrimination was administrative denied on or around July/August 2001. No further action was taken by Plaintiff. Plaintiff resigned her position in the United States Army effective January 2002. No administrative claim before the EEOC has been made nor has any allegation been made in the complaint as to a constructive discharge. The court must conclude that her resignation was totally voluntary. Plaintiff has been employed after retirement from the Army as a civilian in Fort Buchanan under the United States Army Southern Command, the Command directly under co-defendant Major General Valenzuela. Plaintiff, Madeline Millet, in her current civilian employment received the Grade of GS–6 a promotion from her prior civil employment as a GS–4. Plaintiff, Madeline Millet, pursuant to the allegations in the complaint was, at the time of the complaint, holding the civilian position at Fort Buchanan, of the personal secre-

tary to Colonel Alcides Vélez, Jr., Deputy Chief of Staff of Major General Valenzuela. Therefore, the court must conclude that her resignation from the Army was totally voluntary and that she has been able to obtain valuable respectable positions in civil employment at Fort Buchanan after resignation from the Army.

Plaintiff requested an exception to the policy and practice to transfer or reassignment to a location where English is the language of instruction; it was uncontested that twenty-one such requests were made to the Committee created to approve the exception request, only seven were approved all involving personnel of for Civil Grades of GS–8 or higher. Plaintiff's grade as Secretary to Colonel Vélez was that of GS–6. Further, Major General Valenzuela's personal position as to persons in positions similar to plaintiff, requesting enrollment of their children, was to expand the coverage of exceptions as much as possible, however, he was cautioned by the Department of the Defense (DDESS) to the contrary: "Regrettable, neither I nor the DoDEA Director have authority to allow you to waive any provision of the instruction in question.... I am sorry that my response could not be more favorable...." (See Exhibit A and B).

 The Court again emphasizes that Plaintiff was required to exhaust administrative procedures as to EEOC employment claims, as alleged by Plaintiff. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393–395, n. 12, 102 S.Ct. 1127, 71 L.Ed.2d 234, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Clockedile v. New Hampshire Department of Corrections,* 245 F.3d 1, 3–4 (1st Cir.2001); *see also Vinieratos v. United States Dept. of Air Force,* 939 F.2d 762, 767–68 (9th Cir.1991)("Title VII specifically requires a federal [civilian] employee to exhaust his administrative remedies as a precondition to filing suit")(*citing Brown v. General Servs. Admin.,* 425 U.S. 820, 832, 96 S.Ct. at 1961, 1965, 48 L.Ed.2d 402 (1976)); *Johnson v. Orr,* 747 F.2d 1352, 1356 (10th Cir.1984)(dismissing Air Force employee's handicap discrimination suit for failure to exhaust administrative remedies); *Woodman v. Runyon,* 132 F.3d 1330, 1341 (10th Cir.1997); *Jones v. Runyon,* 91 F.3d 1398, 1400 (10th Cir.1996). The Court adds that the evidentiary basis produced by Plaintiff as to discrimination is a series of e-mails from one unknown to Plaintiff soldier to another unknown to Plaintiff soldier sent to Plaintiff wherein in one of the alleged e-mails it is alleged that Sargent Major Kehue was going to "clean house" the "P.R. Mafia" at Fort Buchanan.[7] This exhibit the court does not grant any weight whatsoever because it is totally hearsay, and further was not properly identified by the Plaintiff making the document admissible. (Plaintiff did not know the identity of any of the e-mails writers.) (Ex. 1 to the Opposition to Motion to Dismiss.) Further, the e-mails are dated April 18, 2001, February 20, 2001, and Feb. 16, 2011. The e-mails are nothing but "stray remarks," not attributed to persons with authority as to the employment action. See *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 96 (1st Cir.1996) (explaining the evidentiary value of a "stray remark"). The "stray remark" must be made contemporaneously to the adverse employment action, *Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 36 (1st Cir.2001) (stray remarks must be contemporaneously to the employment discrimination action), certainly stray remarks occurring one year

---

**7.** The email, however, states that Ft. Buchanan was currently at "overstrength" in personnel.

and a half, (Feb., April 2001), before the adverse employment action, (August 28, 2002), is not contemporaneous even if Plaintiff received them months later. Moreover, the e-mails have no bearing in the case because Plaintiff voluntarily resigned from the Army, hence she was not an object of the cleansing to be performed at Fort Buchanan. Further, plaintiff had a valuable, respectable employment as Secretary to the Chief of Staff (G–4) of Mayor General Valenzuela at the time of the adverse employment action (that is, not granting the requested education exception). Finally, Plaintiff alleges that she was retaliated because she was a witness in cases against the Army, her deposition being taken on June 18, 2002, being the date she first divulged her testimony. As stated before Plaintiff must exhaust EEOC procedures even in retaliation claims except if she has a filed predicate EEOC civil action in court, wherein previously she properly exhausted EEOC remedies, and the retaliation is reasonably related to said predicate action. *Clockedile v. New Hampshire Department of Corrections*, 245 F.3d at 3–6. Since Plaintiff has not filed any EEOC Title VII civil action, wherein she properly exhausted EEOC remedies, the claims are barred. But even if they were allowed, the court would not be persuaded simply because at the time she appeared for deposition, she had already received an adverse administrative decision by the DDESS, dated November 16, 2001. Further, notwithstanding her deposition, she was later employed as a civilian employee in the position of the personal Secretary of Colonel Alcides Velez under the command of Major General Valenzuela (the deposition was in June, she was _____ in July 2002). Moreover, the Court concludes based on the facts stated infra that there was no discrimination against Plaintiff Madeline Millet.

Furthemore, the Rehabilitation Act provides remedies only where individuals are discriminated against due to their disability. Here, the prohibition against enrollment of students attending ACSS, unless their civilian sponsor has been certified as holding a transferable position, is applied evenly, without regard to the ability of the sponsor or their dependents. For students who are otherwise eligible and certified to be enrolled, ACSS provides accommodations necessary to meet the special needs of those with disabilities. The mandate to provide reasonable accommodations, however, does not confer an automatic right to enroll in ACSS, solely on the basis of disability. Thus, the provisions of the Rehabilitation Act are irrelevant in the instant case.

Finally, the Individuals with Disabilities Act (IDEA) does not apply, because the Department of the Army Defendants are not a state or local education agency subject to that statute. No provision in the IDEA has been alleged requiring the Army to designate certain positions as transferable; nor has any authority been cited requiring the Department of Defense to admit children into its schools who lack fundamental eligibility to attend those schools.

The Department of Defense Domestic Dependent Elementary and Secondary Schools (DDESS) are required, pursuant to 10 U.S.C. § 2164, to comply with the IDEA with respect to students who are, in fact, enrolled in the program and attending the schools. Plaintiff does not allege, however, that DDESS has failed to provided appropriate educational services to its students. Nothing in this action even remotely claims that the quality of educational services provided by ACSS fails to meet the relevant legal and regulatory mandates. To the contrary, Plaintiff seeks to have Defendant, U.S. Army, required to

certify her position as transferable and to have DDESS directed to admit her dependents, precisely because of the perceived high quality of education provided by ACSS. To allege that the mandates established by Congress under either the Rehabilitation Act or the IDEA for properly enrolled special needs students applies to fundamental ACSS eligibility requirements is specious. Nothing in 10 U.S.C. § 2164 even suggests that DoD is obligated to *admit* students pursuant to these provisions.

Plaintiff is during all critical phases of this case a Federal civilian employee. As such, she had a statutory obligation to file and exhaust her administrative remedies before filing them before a Federal Court. Pursuant to 42 U.S.C. § 2000e–16(c), a Federal employee may not present a claim to a United States District Court under either Title VII or the Rehabilitation Act until their claims have been pending before the Agency for at least 180 days. The Plaintiff has failed to present evidence that she has even filed the relevant administrative claims, let alone administratively exhausted this process as required by Congress. In fact, Plaintiff admits that the only administrative claim she made against the Army predates all the facts of this case and was dismissed on or around July / August of 2001. Hence by August of 2002 that action is more than time-barred. As

such, her claims of discrimination are not now properly before this court and need not be further addressed.

### D. Waiver of Immunity

Here, the only potential waiver of sovereign immunity is found in § 702 of the Administrative Procedure Act (APA), 5 U.S.C. § 702.[8] In her complaint, Plaintiff does not specifically cite the judicial review provisions of the APA as the basis of jurisdiction for this Court to review Defendants' actions. Nevertheless, Plaintiff utilizes the language of the APA by characterizing Defendants' actions as "arbitrary, capricious, an abuse of discretion and contrary to law."

The APA waives the sovereign immunity of the United States and allows for judicial review of federal agency actions in certain circumstances. 5 U.S.C. § 702. Such review is not available, however, if (1) another statute precludes judicial review, or (2) agency action is committed to agency discretion by law. 5 U.S.C. § 701(a). *See Appeal of Sun Pipe Line Company*, 831 F.2d 22, 24 (1st Cir.1987) (APA judicial review provision does not apply "unless and until it has been determined that the § 701(a) threshold has been crossed"). Both of these exceptions apply to this case.

Review of Plaintiff's claim is precluded because the Army's decision not to certify

---

**8.** Plaintiff cites several provisions which they contend establish the Court's jurisdiction over this claim. *See* Complaint & 3. None of those provisions, however, contains the requisite wavier of sovereign immunity. General jurisdictional statutes, such as 28 U.S.C. § 1331, do not provide an express waiver of sovereign immunity allowing a party to obtain relief against a federal official. *See e.g., Montana Dakota Utils. Co. v. Northwestern Pub. Serv. Comm'n*, 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1951). Nor is there an explicit waiver in the Declaratory Judgment Act, 28 U.S.C. § 2201–2202, or corresponding Fed. R.Civ.P. 57. Those provisions do not even

provide an independent basis for jurisdiction, much less a waiver of sovereign immunity. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Progressive Consumers Federal Credit Union v. U.S.*, 79 F.3d 1228, 1230 (1st Cir. 1996). Finally, 28 U.S.C. § 1346 ("The Little Tucker Act"), provides a waiver of sovereign immunity only for money damages, not injunctive relief. *See Richardson v. Morris*, 409 U.S. 464, 465, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973) ("[T]he Act has long been construed as authorizing only Actions for money judgments and not suits for equitable relief against the United States.").

the Plaintiff's position as transferable is committed to agency discretion by law. 5 U.S.C. § 702(a)(2). § 702(a)(2) operates to rebut the presumption of judicial review of administrative action where "the agency's action requires 'a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise' including the prioritization of agency resources, likelihood of success in fulfilling the agency's statutory mandate, and compatibility with 'the agency's overall policies.'" *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir.2000) (quoting *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)). § 702(a)(2) applies to decisions that are "the product of political, military, *economic*, or *managerial* choices that are not really susceptible to judicial review." *Local 2855, AFGE v. United States*, 602 F.2d 574, 579 (3rd Cir.1979) (finding that the Army's decision to contract out jobs that had previously been performed by Government employees was not review able under the APA) (emphasis added).

Plaintiff alleges that she has a protected property and liberty interest in the continued enrollment of her minor dependents in the ACSS schools, citing 10 U.S.C. § 2164. That statute, however, does not in any way obligate or require Defendants to provide a tuition-free education to the Plaintiff's minor dependents. "[A] statute will create an entitlement to a government benefit either if the statute sets out conditions under which the benefit must be granted or if the statute sets out the only conditions under which the benefit may be denied." *Barrington*, 246 F.3d at 5. Plaintiff may not claim an entitlement if the statute grants DoD with discretion in its enrollment decisions or fails to mandate the conditions under which the DoD may grant or deny the educational benefit. The DDESS statute states very precisely that "[t]he Secretary [of Defense] *may, at the discretion of the Secretary,* permit ... de-

pendents of civilian employees of the Federal Government residing in a ... commonwealth ... to enroll in an educational program provided by the Secretary...." 10 U.S.C. § 2164(a)(2). This language does not create an entitlement; rather, enrollment is purely discretionary with the Secretary of Defense. Thus, the language of the statute clearly and expressly provides the Secretary of Defense with discretion regarding student admissibility and squarely contradicts Plaintiff's contentions of entitlement.

### E. Injunctive Relief

In any event, even if this Court were to find a valid jurisdictional basis to consider Plaintiff's claims, the underlying facts as developed as the Show Cause hearing do not meet the well-established requirements for injunctive relief. The United States Court of Appeals for the First Circuit established a four prong test for determining when injunctive relief is appropriate against an educational institution for refusing to enroll a student in the case of *Bercovitch v. Baldwin School*, 133 F.3d 141 (1st Cir.1998). In *Bercovitch*, the defendant, a private educational institution in Puerto Rico, indefinitely suspended a student for misconduct. The plaintiff parents of the student subsequently brought an action in Federal District Court alleging that their child had attention-deficit-hyperactivity disorder (ADAH) and further alleging that his suspension therefore violated the IDEA and the Rehabilitation Act. The plaintiffs requested immediate injunctive relief requiring the defendant to reinstate their child.

The District Court did in fact enter a preliminary injunction directing the defendant to reenroll the student. In reversing this decision and lifting the injunction the *Bercovitch* court set forth the

following test for injunctive relief: (1) the likelihood of success for the plaintiff in the ultimate merits of their claim; (2) the potential for irreparable harm if injunction is denied; (3) whether balancing of hardships favors issuance of injunction; and (4) what effect if any issuance or non-issuance of injunction will have on the public interest. *Bercovitch*, 133 F.3d at 151. The criteria set forth in *Bercovitch* parallels the abundance of jurisprudence on the injunctive relief requirements set forth under *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4 (1st Cir.1991). The Court must underscore at this point that likelihood of success is the **touchstone** of the preliminary injunction inquiry. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir.1996).

Utilizing this test, the First Circuit Court of Appeals found that the facts in *Bercovitch* made injunctive relief inappropriate and unjustified against the defendant educational institution. The Court noted first that under the relevant statutes and Federal regulations, attention-deficit-hyperactivity-disorder does not, by itself, make a student "disabled" under either the Rehabilitation Act or the ADA unless there is a showing that this condition has affected a major life activity. Secondly, the court found that even if the plaintiffs were ultimately able to prove that their child was disabled, the relief he was seeking—exemption from the defendant school's code of conduct—would not be a "reasonable accommodation" Finally, the Court of Appeals found that the record did not establish "even a whisper of a suggestion" that the defendant school's actions in regard to the plaintiff were based on a discriminatory motive. *Bercovitch*, 133 F.3d at 153. The evidence established at the Show Cause hearing in the instant action simply does not justify a preliminary injunction under *Bercovitch*.

As noted, the Secretary of Defense has promulgated specific regulatory rules for determining which military members and Federal civilian employees are eligible to sponsor their dependants in ACSS through Department of Defense Instruction (DoDI) 1342.26, *Eligibility Requirements for Minor Dependents to Attend Department of Defense Domestic Dependent Elementary and Secondary Schools (DDESS)*. § B1 of this Instruction expressly states the DoD dependent schools in Puerto Rico are covered by its provisions. § F2(2) of the Instruction defines the limited category of Federal civilian employees in Puerto Rico who are eligible to enroll their children in ACSS. This provision states in relevant part the following: "Full-time civilian employees of the Federal Government, not residing in permanent quarters on a military installation, residing in a territory, possession or commonwealth, who are subject by policy and practice to transfer or reassignment to a location where English is the language of instruction in the schools normally attended by dependent children of Federal personnel."

DoDI 1342.26 also unequivocally states how Federal civilian employees must establish that they are in fact subject to a policy and practice of transfer. § F3d(1) states "The Agency employing the civilian sponsor shall provide a statement confirming the sponsor's position meets the eligibility requirements." As will be set forth below, the evidence developed at the Show Cause hearing established beyond cavil that a duly authorized official of Plaintiff's Federal Agency, the Department of the Army, has never designated her position as being subject to a policy and practice of transfer.

The testimony of Colonel Simmons along with USARSO's published Memorandum of Instruction on eligibility requirements for ACSS, clearly established that the

Army had a rational, non-discriminatory system established for civilian employees to request that their position be declared transferable. (Defendants' Exhibit B). These procedures vested an independent committee of three designated senior officers with the authority to recommend, based upon established criteria, which civilian positions should be certified as transferable. The decisions of the committee are required to be certified by the Commander of USARSO before they become an official Agency decision.

It is beyond doubt that Plaintiff was well advised of the established procedures because she had previously requested that her former civilian position be certified as transferable. This request was denied by the commander on 21 August 2002. (Joint Exhibit 3). Indeed, Plaintiff testified that she was aware of this denial when she submitted a new application directly to the General Counsel's office of the Department of Defense Education Activity on August 27, 2002. The confusion caused by this application, and the wrongly assumed authority of Colonel Velez to make transferability decisions on behalf of USARSO, resulted in Plaintiff's dependents being mistakenly enrolled at ACSS.

However, the uncontested evidence before this Court is that Plaintiff was advised the same date by Mr. Deavel within hours of enrolling her children in ACSS that her certification of transferability had been unequivocally rejected by the Army. Furthermore, Mr. Deavel testified that he had not unconditional advised plaintiff on August 28, 2002 that she could enroll her dependants in ACSS, but to the contrary, had clearly informed plaintiff that if, and only if, the Department of the Army had in fact certified her civilian position as transferable could eligibility could be restored. Plaintiff confirmed that she had in fact been informed of this critical caveat in her conversation with Mr Deavel on August 27, 2002, and, in no event later than August 28, 2002.

Plaintiff would have this Court hold that a government agency is barred from withdrawing a mistakenly given and unauthorized benefit once the mistake is discovered. However, no statute binds the Federal government from withdrawing benefit granted based upon inaccurate or misleading applications for benefits. Indeed, the case law addressing this very question is directly opposite to plaintiff's position. *Kauffman v. Puerto Rico Telephone Company*, 841 F.2d 1169 (1st Cir. 1988) (to enjoy a property interest protected by due process the alleged holder of the property interest has to have fulfilled all of the requirements).

The weakness of plaintiff's position on this issue is exacerbated both by the fact that the mistake in question (provisionally granting eligibility) was corrected within the same date of having been made, and by the fact that plaintiff is at least partially responsible for the mistake occurring in the first place. Plaintiff failed or avoided utilizing established Army civilian transferability certification procedures and her silence when Mr. Deavel advised her that ACSS eligibility was being granted only under the belief that Colonel Velez was authorized to make transferability certifications further compounded the confusion caused by the application.

Lastly, Plaintiff would have this Court substitute its interpretation for when continuation of enrollment in ACSS is authorized under DoDI 1342.26(g), for that of the Director of DDESS, Dr. Elaine Hinman (Exhibit 4). Subsection (g) states: "If the status of the sponsor of a currently enrolled student changes so that the child would no longer be eligible for enrollment in a DDESS Arrangement, enrollment may continue for the remainder of the

school year." (*See* Joint Exhibit IV, p. 4). As noted, Federal Agencies are entitled to deference in the interpretation of their own regulations unless those are clearly arbitrary or capricious. The September 5, 2002 decision of Dr. Hinman finding this regulatory provision inapplicable to plaintiff's request for continued enrollment is neither arbitrary nor capricious. The regulatory provision in question, allowing enrollment of dependants to be continued for the remainder of the academic year despite a "change in the status of the sponsor" cannot be reasonably be interpreted to mean that an error in enrollment of a few hours benefitting an ineligible sponsor, creates an enrollment for the remainder of the year. The correct interpretation is exactly as occurred to Plaintiff. She resigned in the middle of a school year, effective in January of 2002, and her children were authorized to finish the remainder of that year.

The plaintiff cannot meet the factual threshold for receiving the protection of the one-year exemption created by this provision. Indeed, the Court notes that the plaintiff has already received the benefit of this one-year sanctuary for her dependant, Fabien. Plaintiff first lost eligibility to continue sponsoring her dependents in ACSS when she voluntarily retired from active duty in January 2002. However, her dependents were not summarily dismissed from ACSS at this point. To the contrary, the 16 November 2001 decision letter of Dr. Hinman clearly permitted plaintiff's dependant, Fabien, to complete the 2001–2002 school year, and granted a second dependent, Yaleen, a "rising senior" exception which allowed her to complete high school, in spite of the fact that plaintiff had lost the right to sponsor dependants pursuant to her retirement. Dr. Hinman's letter clearly explains: " 'good cause' continuation of enrollment has been defined by the Secretary to mean " 'in the national interest,' and has been reserved for such situations as the death or disability retirement of a military member, or the case of a rising senior who is currently enrolled." *See* Joint Exhibit III, p. 2.

Plaintiff would argue that this special regulatory sanctuary should be renewed for a second year as the appropriate remedy for an inadvertent mistake in enrolling her dependants, a mistake of which she conceded receiving hours after it occurred. Neither a plain reading of the regulation authorizing this sanctuary nor the equities related to the facts in this case support plaintiff's requested relief.

Just as the Plaintiff has failed to demonstrate a high probability of success in the ultimate merits of her claims, the evidence admitted at the Show Cause hearing failed to establish the high equitable standard required in the third and fourth prongs of the *Bercovitch* test for injunctive relief. That is, plaintiff has failed to establish either that the "balancing of hardships" or the "general public interest" (*Bercovitch*, 133 F.3d at 151) would be served by enjoining the Defendants from following their normal rules and procedures for determining both the transferability of civilian employees and the eligibility of students for ACSS. Plaintiff fails however, more importantly, at showing any likelihood of success, which is the **touchstone** of the preliminary injunction inquiry. *See Ross–Simons*, 102 F.3d at 16.

As stated earlier in this opinion, absent explicit statutory authorization permitting an agency to be sued, such agency cannot be sued. No statutory authorization for suit against the Army or the Department of Defense has been granted relevant to the claims presented.

*F. Estoppel*

█ Finally, plaintiff argues that since defendant allowed for the minors' enroll-

ment in school, albeit for a few hours, defendants cannot go against its own acts or, are estoppel from denying enrollment, although it was in violation of the law and regulation governing such enrollment. "The doctrine of equitable estoppel in its traditional incarnation does not apply against the federal government." *See, e.g., OPM v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 761 (1st Cir.1985); *see also Heckler v. Community Health Servs.,* 467 U.S. 51, 67, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (Rehnquist, J., concurring) (noting that the Supreme Court has never upheld an estoppel claim against the government). A party seeking to invoke equitable estoppel against the federal government at a minimum "must have reasonably relied on some 'affirmative misconduct' attributable to the sovereign." *Ven–Fuel,* 758 F.2d at 761.

■ This doctrine has been defined by the First Circuit as a judicially devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or a defense, regardless of its substantive validity. *Phelps v. Federal Emergency Management Agency,* 785 F.2d 13 (1st Cir. 1986). Courts invoke the doctrine when one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it acts to his or her detriment. *Federal Deposit Insurance Corp. v. Roldan Fonseca,* 795 F.2d 1102 (1st Cir.1986). The requirements of the doctrine are thus three: first, a material misrepresentation; second, reasonable reliance upon the misrepresentation; and finally, some disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation. *Falcone v. Pierce,* 864 F.2d 226

(1st Cir.1988). The party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse ... and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler,* 467 U.S. at 59, 104 S.Ct. at 2223.

■ From its earliest cases, the Supreme Court has decided that equitable estoppel will not lie against the Government as against private litigants. *See The Floyd Acceptances,* 7 Wall. 666, 74 U.S. 666, 19 L.Ed. 169 (1868); *Utah Power & Light Co. v. United States,* 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917). "It is enough to say that the United States is neither bound nor estoppel by the acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Utah Power,* 243 U.S. at 408, 37 S.Ct. at 391. These principles were reiterated in *Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). In this case, an agent of the Federal Crop Insurance Corporation advised a farmer that his entire crop qualified for insurance. Relying on the information the farmer applied and obtained crop insurance. After the crop was lost, it was discovered that the agent's advice was erroneous and part of the crop was not eligible for federal insurance. The Supreme Court determined that "not even the temptation of a hard case" will provide a basis for ordering recovery contrary to the terms of the regulation, for to do so would violate "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Id.* at 385, 68 S.Ct. at 3.

Two important policy considerations support the Government's non-estoppel doctrine. First, is the protection of the

constitutional principle of the separation of powers, as a liberal application of equitable estoppel against the government would allow courts to expand the powers of federal officials beyond legislative limits. *Phelps v. FEMA*, 785 F.2d 13, 17 (1st Cir.1986). Second, there is a strong policy interest advocating for the protection of the public fisc. It responds to the "need to protect the government against unscrupulous officials who may seek to profit through their fraudulent acts, possibly in collusion with private parties." *Falcone v. Pierce*, 864 F.2d 226, at 229 (1st Cir.1988). Furthermore, in *Heckler*, 467 U.S. at 60, 104 S.Ct. at 2224, the Supreme Court stated: "When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estoppel on the same terms as any other litigant. . . ." Therefore, although the door has been slightly left open, no exceptions have been recognized by the Supreme Court. The First Circuit has already stated that the Supreme Court "has consistently refused to apply the equitable estoppel doctrine against the government, no matter how compelling the circumstances." *Phelps*, 785 F.2d at 17, and *Fonseca*, 795 F.2d at 1108. "Thus, it is our Circuit's position that the defense of equitable estoppel cannot be raised as a defense against the Government." *United States v. Government Development Bank*, 725 F.Supp. at 104. This Court, however, does not believe that this case is one of those possible exceptions.

██ As a general rule, doctrines such as estoppel and apparent authority are not available to bind the federal sovereign. *See Igbonwa*, 120 F.3d at 443; *United States v. Holmquist*, 36 F.3d 154, 161 n. 7

(1st Cir.1994). Thus, the inquiry into the scope of the defendants' authority here (particularly are to Col. Alcides Vélez, Jr.) must be framed in terms of actual authority. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Dresser Indus. v. United States*, 596 F.2d 1231, 1236 (5th Cir.1979). Actual authority may be conferred either expressly or by necessary implication. *See Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir.1996); *United States v. Greene*, 995 F.2d 793, 800 (8th Cir.1993); see generally Restatement (Second) of Agency § 7 cmt. c, at 29–30, § 8 cmt., at 30 (1958). The possibility of authority need not occupy the Court for long. Virtually by definition, a government employee possesses express authority to bind the government if—and only if—the Constitution, a federal statute, or a duly promulgated regulation grants such authority in clear and unequivocal terms. Plaintiff points to no constitutional provision, federal statute, or binding regulation that cedes to the defendants (particularly Col. Vélez), the explicit authority to certify eligibility for enrollment for school year 2002–2003.

Even if a claim is based on the misrepresentation of a government agent, (which in this case there is no evidence of it as the Court finds that there was a good faith effort from the Government agents to try to help the plaintiffs with enrollment) such claim will only succeed if the agent acted within the general scope of his or her duties. This the evidence has shown. Even in this hypothetical scenario, when a government official engages in ultra vires conduct, the official "will not, in any legal or constitutional sense, represent the United States, and what he does or omits to do, without the authority of Congress, cannot create a claim against the Government 'founded upon the Constitution.' " *Hooe v. United States*, 218 U.S. 322, 335, 46 Ct.Cl. 655, 31 S.Ct. 85, 54 L.Ed. 1055 (1910).

*Del–Rio Drilling Programs Inc. v. United States,* 146 F.3d 1358, 1362 (Fed.Cir.1998).

"Absent actual authority on the part of the Government's agent to bind the Government in contract, no binding contract can exist, regardless of the agent's representations." *John Doe v. United States,* 100 F.3d 1576, 1584 (Fed.Cir.1996), reh'g denied (1997). The requisite of actual authority can be express or implied. *H. Landau & Co. v. United States,* 886 F.2d at 324. "Government employees have express actual authority to bind the government in contract when such authority is unambiguously granted by the Constitution, a regulation, or a statute." *Confidential Informant v. United States,* 46 Fed.Cl. 1, 7 (2000); *see also Roy v. United States,* 38 Fed.Cl. 184, 188 (1997).

■■■ The plaintiffs have not identified any statute or regulation which granted express or actual authority to Col. Alcides Vélez or Mr. Philip Deavel to certify eligibility for enrollment, nor have they supplied any documentation of authorized delegations to these persons. The defendants, however, have identified law and regulations requiring that authority must be, and was actually, specifically delegated. As explained above, Defendant has also provided evidence that neither Col. Vélez nor Philip Deavel were delegated with such eligibility authority to certify enrollment for Fabien Neely and Madeline Millet for school year 2002–2003.

## IV

## CONCLUSION

In sum, Plaintiff is seeking preliminary injunctive relief and declaratory judgment. The Court, after analyzing the arguments made by Plaintiff, and after holding a hearing on this matter, denies the injunctive relief sought by Plaintiff, for the reasons that follow. First, Plaintiff has failed to show any likelihood of success on the merits, which is the touchstone of the preliminary injunction inquiry, and therefore the Court fails to recognize the need for injunctive .relief. *See Ross–Simons,* 102 F.3d at 16. Secondly, the fact that Plaintiff's dependent were signed-in school for a few hours one day, by mistake, in no way binds the Federal government from withdrawing benefit granted based upon inaccurate or misleading applications for benefits, nor creates a property interest. *Kauffman,* 841 F.2d 1169. Plaintiff has thus failed to sufficiently allege a constitutionally-protected, property interest. Third, Plaintiff fails to establish her substantive discrimination as well as her retaliation claim, for failure to exhaust administrative remedies. Fourth, even after evaluating the merits of this case prima facie, she could still not establish her discrimination claim because she voluntarily resigned to her military occupation, and with it, she gave up all legal entitlement to the benefits she now asserts. Also, no discrimination may ensue against defendants, particularly in light of the fact that she has been able to acquire excellent civilian employment under the command of Major Valenzuela, as personal secretary to Colonel Alcides Velez, the G–4 of the Army _____. even after she resigned her military employment. Of course, her civil employment on base subjected the education benefits for her children, to the sound, legal discretion of her civil superiors; and legally, Plaintiff is not entitled to these benefits. Therefore, the Court deems that, stripped of the discrimination enhancements, this case is simply a request for an exception. As stated before, in the exercise of discretion, it was determined that Plaintiff's employment position, as a GS–6, was not entitled to receive the exception of admission, as an exception. Moreover, this determination was not capricious or arbitrary, particularly in light

of the fact that the unrebutted record discloses that it was made on the basis of Plaintiff's employment level position, GS–6; and all the other exceptions granted were for positions of GS–8 or higher, while, as stated before, Plaintiff's current position is a GS–6. Hence, on this score, Plaintiff's request for injunctive relief must be denied.

The Court is not totally unsympathetic to plaintiffs' personal cause. However, in this case, the public interest lies in defendants applying the law and its pertinent regulations during school year 2002–2003. It simply outweighs Plaintiff's individual personal convenience. Plaintiff Madeline Millet knew, since November of 2001, that her loss of eligibility would mean that minors Fabien Neely and Madeline Millet (and even Yaleen, the older daughter) could potentially not be authorized for enrollment for school year 2002–2003, notwithstanding, that her oldest daughter Yaleen was granted a waiver from the enrollment requirements due to her being a "rising senior." Plaintiff Madeline Millet faced a Hobsonian choice when she voluntarily retired, effective January 2002. If she followed her husband to Colorado, as a military person in active service, all three children would be entitled to eligibility in Colorado (using her husband as a sponsor). She did not choose this alternative because she desired that her oldest child, Yaleen, graduate with her high school friends in Puerto Rico. In making this choice, she risked that her other two younger children would not be eligible here in Puerto Rico because she was a civilian and was not using her husband's entitlement in Colorado and, consequently, she was facing an exceptional request which could be and, in fact was, denied. The record further shows that, since November of 2001, plaintiff Millet has not made any effort whatsoever to seek alternate educational options for her daughters in Puerto Rico. Those options exist, although they may be more expensive.

**WHEREFORE,** in view of the forgoing, Plaintiff's motion for a temporary restraining order is **DENIED.** Docket No. 2. Defendants' motion to dismiss is also **DE-NIED** (Docket No. 3) because the FED-ERAL RULES OF CIVIL PROCEDURE require the Court to accept as true the facts alleged in Plaintiff's pleadings, which the Court refuses to do, provided the facts alleged in her complaint were clearly contested at the hearing held on October 7–8, 2002.[9] Instead, the Court shall issue an order, requiring Plaintiff to show cause as to why this case should not be dismissed, pursuant to the facts established at said hearing.

**IT IS SO ORDERED.**

## ORDER ON RECONSIDERATION

### I.

After the court issued the Opinion and Order, (Docket No. 15), on October 18, 2002, the Plaintiffs have filed two motions requesting Reconsideration. On November 14, 2002, plaintiffs subscribed a Motion Requesting an Order to Show Cause

---

**9.** It is well-known that when deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in Plaintiffs' favor. *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996); *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996); *Gooley v. Mobil Oil Corp.* 851 F.2d 513, 515 (1st Cir.1988). That is, when considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint, accepting these allegations as true. *Litton Indus., Inc. v. Colon,* 587 F.2d 70, 74 (1st Cir. 1978).

Addressed to the Defendant Vis a Vis the Supplementary Documents Submitted Herein Filed on November 14, 2002, (Docket No. 21), and an Emergency Motion accompanying Supplementary Documents Issued Today (12–6–2002) Regarding the Official Transfer of Plaintiff Madeline Millet's Function to Fort Sam Houston, San Antonio, Texas, (Docket No. 26). She is requesting a denial made by the court that pursuant to United States law, rules and regulations she was not eligible as a civilian to enroll her minor children Fabien and Ann free of costs in a military school.

The Court held a hearing on November 20, 2002, as to the first request. The second request (Emergency Motion) is based on identical same grounds as the first Motion of Reconsideration but based on a more contemporaneous United States Army document addressed to Plaintiff Madeline Millet included as an exhibit in Plaintiffs' Emergency Motion in Compliance with Order ... (Docket No. 26). The court has thoroughly analyzed the request made by Plaintiff and refuses the invitation to reconsider. The court explains.

Plaintiff Madeline Millet has recently produced several documents supporting that she is an employee transferable as a secretary in the position of "SECY OA," GS 6, 00318 in G–4 (logistic) and hence is now eligible as a civil employee to be certified pursuant to regulations to enroll her minor children in a military school. See Exhibits 9–A, 9–A1, 9–B and 9–C. (All of these documents are unclassified, some are dated October 29, 2002, after the court denied relief on October 18, 2002). See also Ex. 1 and 1–A Emergency Motion, (Docket No. 26), documents appended thereto dated December 6, 2002.

The documents issued by plaintiff in requesting the reconsideration are insufficient to comply with her request to recon-

sider. The regulation authorizing civilians to enroll dependents in military schools has various requisites. First, in the issuance of the certification, "the Commanding Officer is the is final authority" (Joint Ex. V § 6(c)). None of the documents submitted is approved by the Commanding General or by anyone having delegated powers as required by the regulations governing enrollment of civilian dependents in military schools, see discussion infra.

Further, " ... the **employee** must be subject by policy and practice to transfer or reassignment to a location where English is the language of instruction ..." (Emphasis ours) (Joint Ex. 5 § 6(b)). Plaintiffs have recently produced documents all dated in October–December 2002, after Plaintiff was officially administratively denied the request by the Commander on October 7, 2002, stating that the **position** that she holds is to be transferred, (See Ex. 9–A–1 and 9–A.) Still more recently Mrs. Millet received a letter dated December 6, 2002 stating that "**your function** has been determined to transfer to Fort Sam Houston, San Antonio, Texas on October 1, 2003." (Emphasis ours.) The letter continues stating "this memorandum is intended to officially inform you of the decision, **and also to determine who might be interested** in transferring to Fort Sam Houston. Please indicate your interest in the enclosed form." (Emphasis ours.) The letter is further issued under a separate law and regulation, not related to enrollment of civilian dependent in military schools, Title 5 CFR Part 351 and Section 2003. (Said entire chapter regulates reductions in force of civilian personnel, Part 351–The chapter does not regulate the civilian enrollment of dependents free of cost in military schools.)

It is clear that the letter does not constitute a determination that plaintiff will be transferred but that her "functions" and/or

the "position" is determined to be transferred. The court received at the hearing held on November 20, 2002, testimony from an expert in Resources and Management, Cindy Marotta, that plaintiff will not necessarily be transferred notwithstanding that her "position" is to be transferred. She could be "bumped" by local civilian employees in the Houston area. Further, Col. Simmons, Director of Personnel, G–1 of USARSO, testified unequivocally that another person in civilian employment currently working in Fort Sam Houston with more seniority may also request the position and may consequently "bump" plaintiff. Hence, it is evident from the evidence examined as a whole that plaintiff has not yet been certified as "an employee ... subject to transfer." (Ex. B).

But more critical, the certification for enrollment in military schools of civilian dependents pursuant to regulation is achieved by "an agreement for transportation entitlement" Joint Ex. V § 6(a), there is no evidence on record as to any such agreement. The certification may alternatively be achieved by "the employee [being] subject by policy and practice to transfer or reassignment." Joint Ex. V § 6(b). The certification sought requires "commander endorse[ment]" complying with all the requisites set forth at § 6 of Ex. B. None of the documents presented by plaintiff or currently submitted in evidence have the commander endorsement and none of the documents comply with the requisites under § 6 of the regulation issued on July 15, 2002. The "certification of eligibility" must be a recommendation of the Review Committee composed of three members as indicated at § 7 of Ex. B, for eventual Commander approval. Paragraph § 6 and § 7 of Ex. B clearly set

forth the procedure to be followed if a civilian desires a certification to achieve enrollment of dependents in military schools:

"6. *Certification.* Full time federal civilian employees shall submit their certification of eligibility request through their supervisor. The supervisor is responsible for providing the request and the required supporting documentation to his/her Director/Commander for endorsement. Management must include the following in its request: employee's job announcement and history of the position; employment history of the requestor, focusing on duty locations and positions held; and a history of the dependent's education. If the Director/Commander endorses the request, the completed packet will then be forwarded through the Chief, CPAC, to the G–1.

7. The G–1, upon receiving a completed packet, will form a committee composed of the following three members or their designees, the Chief of Staff, USARCO, G–1, and Garrison Commander. The Committee will review the entire packet and make a recommendation to the Commanding General (CG), U.S. Army South. To completed certification shall be forwarded to the ACSS Superintendent for verification as soon as practicable for enrollment in the coming school year." [1]

Plaintiff, who now has "new" documents, may choose at her discretion to follow the procedure set forth above which ends with a recommendation by the Review Committee to the Commanding General. It is noted that at the time of the original court hearing held on October 7, 2002, twenty-one identical certificate requests had been

---

**1.** The procedure was followed resulting in a rejection of the request of Mrs. Millet's. The Commander upon the recommendation of the Review Committee rejected the certification, see Ex. 1 dated October 7, 2002, filed by plaintiff as an exhibit to Docket No. 17.

made to the Review Committee, only seven had been approved, none below G–8 level. It is therefore not a foregone conclusion that Plaintiff Mrs. Millet will be the certified as "the employee" subject to transfer.

The request of Madeline Millet as a civilian employee is **not** a right but is a matter subject to sound discretion of the Secretary of Defense. 10 U.S.C. 2164 (granting the Secretary of Defense discretion; the discretion is further ultimately delegated to the Commander, see discussion infra.)

The documents recently produced, Ex. 9A, 9B, 9C and the letter of December 6, 2002, Ex. 1 of Docket 26, are simply insufficient for enrollment of civilian dependents because they do not comply with § 6 and § 7 of the Regulation, (Ex. B.). The matter of enrollment of civil dependents in military schools under 10 U.S.C. 1064 has been delegated by the Secretary of the Defense to the Director of the Department of Defense Education Activity, Do DEA, or his designee in this case the Commander and the Commander has delegated the matter for recommendation to him to the Review Committee. See Joint Ex. IV and Ex. B. The Committee has discretionary authority to determine whether or not to certify the civilian employee coming from the local puerto rican market or from Fort Sam Houston thereby saving relocation expenses involved.[2] None of the documents produced by plaintiff emanated from the Review Committee.

The only document having as a basis a determination by the Review Committee is the document **rejecting** the certification of Mrs. Millet dated October 7, 2002.

The documents produced by Mrs. Millet, Ex. 9(A)(B)(C), totally by pass the regulation granting the Commander the discretion of selecting the particular civilian employee who will be transferred to perform the functions of the position that will be transferred. It is the Secretary of Defense who has that discretionary function delegated to the Commander and delegated in turn to the Review Committee. The Review Committee makes a recommendation to the Commander. See Ex. B § 6 and § 7. The documents presented by plaintiff Ex. 9(A)(B)(C) together with the letter of December 6, 2002, do not conclude that plaintiff is the selected person. Those documents simply state that the "position" is transferrable and/or the "functions" are "transferable." In the letter of December 6, 2002, plaintiff is invited to express her interest to transfer but no outright order transfer is certified, provided or even stated in the document.

Plaintiff's theory that the recently produced documents, Ex. 9(A)(B) and (C) and letter of December 6, 2002, lead to automatic enrollment of her civilian dependents can not proceed. The result would be illogical since the decision would be made not by the Do DEA, or its designee, the Commander on recommendation of the Review Committee but by another lower official without the required legal authority provided pursuant to regulation. It is emphasized that by regulation the decision as to the enrollment of civilian dependents in military schools belongs **exclusively** to Do DEA, or its designee, the Commander, who receives recommendations from the Review Committee created by the regulation (Ex. B). Further, the documents recently filed refer only to "position" and "functions" to be transferred to Sam Houston. The determination of who in particular will be the civilian person selected to be

---

**2.** The Committee is composed of "the Chief of Staff, USARCO, G–1 and [the] Garrisson Commander", Ex. B § 7. "The Committee will review the entire packet and make a recommendation to the Commanding General."

transferred belongs to the Commander on recommendation by the Review Committee. The Review Committee for valid economic, non discriminatory, reasons may recommend that certain civilian employees in lower positions may be retained from the Houston civilian market thereby saving potentially expensive relocation expenses. The letter of notification of transfer of position can not signify automatic civilian enrollment of dependents because said person may later not be certified by the Review Committee and in the interim the civilian (not later transferred) may potentially cause either overcrowding in the military schools or displacement of other qualified dependents of civilian or even worse, may attempt to displace dependents of active military personnel in the school. The theory urged by Mrs. Millet is simply illogic and untenable because it simply bypasses regulation procedure requiring the Do DEA, or its designee, the Commander to determine the specific persons that should be certified.

The documents recently filed by Plaintiff, after she received the rejection of certification by the Commander upon recommendation of the Review Committee dated October 7, 2002, merely state the transfer of the "position" and/or the "functions" of the "position" occupied by Madeline Millet. It is entirely possible that another civilian employee more senior than plaintiff may qualify for the position. (Secretarial position currently being held by Mrs. Millet.)

Hence, the court **DENIES** the reconsideration requested.[3]

## II.

Plaintiff has further filed a Motion in Compliance With Order to Show Cause dated October 18, 2002, (Docket No. 17). The motion is in response to the court's Order to Show Cause why the case should not be dismissed based on the court's Opinion of October 18, 2002, (Docket No. 16).

The court has reviewed the plaintiff submittal and concludes that the case must be dismissed. The court explains.

Plaintiff requests the court to correct the statement made at the Order of October 16, 2002, that the minors Fabien and Anna had "inadvertently enrolled" but a few hours on August 28, 2002. Plaintiff contends that they were enrolled until September 20, 2002. The fact is that the error in enrollment was discovered the next immediate date and notified on that same date to Plaintiff Madeline Millet. However, as an accommodation, Plaintiff's children were authorized to remain in school until September 20, 2002. (See Ex. 6 to the Complaint, letter by Dr. F.C. Stone, Associated Superintendent of the Antilles Consolidated System.)[4]

The court at the request of Plaintiff concludes that the enrollment of the children was originally authorized by Mr. Deaver wrongly thinking that the letter dated August 26, 2002 signed by Col. Vélez constituted a "certification" of employee subject to transfer. The children pur-

---

**3.** The court further notes that the decision of the Director of the Do DEA [or its designee] is "final" as to enrollment of [civilian] dependents. Joint Ex. IV § 3 F., p. 4.

**4.** The additional time from August 28, 2002 until September 20, 2002 was a mere accommodation simply because since August 28, 2002, the same date of enrollment plaintiff

knew that the children were not eligible since Mrs. Millet had not been certified as an "employee" subject to "transfer" as required by the regulation governing the enrollment of civilian dependents in military schools, Ex. B, § 6 and § 7. (The determination is originally made by the Review Committee and recommended to the Commander.)

chased uniforms and school books and materials. Mrs. Millet was advised on August 27, 2002 of enrollment by Mr. Deaver and subsequently advised of the error on late August 28, 2002. (See p. 4–5 § 4–6 of Opinion and Order, Docket No. 15.) The children have remained out of school since September 20, 2002. The court also concludes at the request of Plaintiff that Fabien Nelly suffers from ADD.

Plaintiff further request that the court to conclude that the certification and the authorization for enrollment of the minors Fabien and Anna at the Antilles School granted on August 27, 2002 by Mr. Deaver was an official act. The request is **DENIED** for various reasons. First, the basis for the authorization was the letter written by Col. Alcides Vélez on August 26, 2002. Said letter does not constitute a certification because it is not authorized by the Commanding Officer, the designee of Do DEA, as required under regulation (Joint Ex. V § 6(c)) nor recommended by the Review Committee to the Commander as set forth under § 6 and § 7 of the applicable Regulation, (Ex. B). Further, Col. Vélez under oath stated that the letter was ultra vires since the authority was delegated for recommendation to a Review Committee created by the Commanding Officer (Ex. B § 6 and § 7, Col. Vélez was not one of the members of the Review Committee); further, the letter does not state that Mrs. Millet was the "employee" subject to transfer. Finally, the alluded Col. Vélez's letter was intended as a mere recommendation and was properly eventually elevated to the Review Committee. Anyway the administrative decision of the Review Committee has been rendered recommending denial and was adopted by the Commander General which is the designee of Do DEA. See Ex. 1, dated October 7, 2002, addendum to Motion in Compliance With Order [of Plaintiff], (Docket No. 17).

Plaintiff also requests, again, that the court apply the doctrine of equitable stoppel to the United States [referring to the authorization of enrollment authorized by Mr. Deaver based on Col. Vélez' letter]. The request is **DENIED** for the reasons stated in the Opinion and Order, Docket No. 15, p. 24–29. *Utah Power and Light Co. v. United States*, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1914) ("It is enough to say that the United States is neither bound nor stopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit.") 243 U.S. at 408.

Plaintiff additionally claims that she has properly exhausted the administrative claim as to civilian enrollment of her children in military schools pursuant to regulations. The problem is that in order for Plaintiff to obtain a valid and effective certification for enrollment by a civilian dependent in a military school plaintiff must follow the procedure set forth in the applicable regulation at Joint Ex. IV and Ex. B, § 6 and § 7. This procedure was eventually followed resulting in the ultimate denial of certification by the Commander as Do DEA designee based on a recommendation of the Review Committee informed to plaintiff in a letter dated October 7, 2002. The newly acquired and produced evidence does not comply with the applicable regulation, Ex. B, § 6 and § 7.

The court further finds that plaintiff has not properly exhausted EEOC administrative procedures as to EEOC retaliatory claims alleged in the complaint. See Opinion and Order, Docket No. 15 p. 11–16. The court briefly restates why Plaintiff's EEOC retaliatory discrimination claim is meritless. First, plaintiff is obligated to exhaust EEOC procedures as to the alleged reprisal claims. *Vinieratos v. United States Dept. of the Air Force*, 939 F.2d

762, 767–68 (9th Cir.1991) (federal civil air force employee must exhaust administrative remedies); *Clockedile v. New Hampshire Department of Corrections,* 245 F.3d 1, 3–4 (1st Cir.2001) (normally retaliatory or reprisal claims are subject to EEOC administrative exhaustion). As an exception some limited reprisals claims may not have to exhaust remedies should the employee be then litigating an EEOC claim previously properly exhausted and the reprisal claim be reasonably related to the claim. *Clockedile v. New Hampshire Department of Corrections,* 245 F.3d at 3–4. Plaintiff's claim does not qualify within the exception because she is not currently litigating an EEOC claim properly exhausted. Plaintiff only EEOC claim properly exhausted was denied and was further not timely litigated as authorized under the law.

Further, plaintiff can hardly claim on the merits a whistle blowing/reprisal claim simply because the determination related to her children originally occurred in November 16, 2001. She was not a witness to civil cases relating to alleged persecution of " puertorican mafia" civil employee until late summer of 2002. Moreover, she can hardly claim persecution when she voluntary resigned from the Army after twenty years of service on January 1, 2002, obtained thereafter a civilian employment earning in excess of $20,000.00 as GS–4 and was quickly promoted to GS–6 earning around $25,000.00 all under the USARCO command of Maj. General Valenzuela. The fact that plaintiff has not been granted the requested exception as a GS–6 civilian employee to have her children enrolled in a military school free of charge is not exceptional since twenty-one others had also made identical requests and only seven were granted (fourteen rejected), none of the approved below GS–8 level.

Defendant has further re-alleged the claims for due process and equal protection. The court has considered all of these allegations and **DENIES** the same for the reasons set forth in the Opinion and Order, Docket No. 15 dated October 18, 2002. The court is, therefore, not persuaded by Plaintiff's response to the Show Cause Order of October 18, 2002, (Docket No. 16), and hence proceeds to **DISMISS** the case for the reasons set forth in the Opinion and Order of October 18, 2002, (Docket No. 16), as herein amended. That is, the court finds that plaintiff does not have a valid and effective certification issued by the proper delegated authority as required by statutes and regulations (the Do DEA or its designee the Commander); the only valid certification made following the procedures of the regulation, Joint Ex. IV and Ex. B, § 6 and § 7, on the record, denies the request of Mrs. Millet, (letter of October 7, 2002), a decision informed based on a determination of the Commanding General recommended by the Review Committee. Further, the court finds that the claims for alleged EEOC reprisal, due process, equal protection, etc., are meritless.

**The Motion to Dismiss filed by defendant on November 21, 2002, (Docket No. 25), is GRANTED.**

**IT IS SO ORDERED,**

San Juan, Puerto Rico, this 13 day of December 2002.